**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY YOON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LULULEMON USA INC. and QUANTUM METRIC, INC.,<br><br>Defendants. | Case No.  5:20-cv-2439<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Mary Yoon ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendants Lululemon USA, Inc. ("Lululemon") and Quantum Metric, Inc. ("QM") (collectively, "Defendants") for wiretapping the electronic communications of visitors to Defendant Lululemon's website, Lululemon.com (the "Website"). The wiretaps, which are embedded in the computer code on the Website, are used by Defendants to secretly observe and record website visitors' keystrokes, mouse clicks,[1] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time. By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiff's and Class Members' privacy rights in violation of the California Constitution.

2. In or about April 2020, Ms. Yoon visited the Website. During the visit, Defendants recorded Plaintiff's electronic communications in real time, including Plaintiff's mouse clicks, keystrokes, and payment card information.

3. Plaintiff brings this action on behalf of herself and a class of all persons whose electronic communications were intercepted through the use of Defendants' wiretap on the Website.

## THE PARTIES

4. Plaintiff Mary Yoon is a resident of Corona, California and has an intent to remain there, and is therefore a domiciliary of California. In or about April 2020, prior to the filing of this lawsuit, Ms. Yoon visited the Website and made a purchase.

---

[1] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

Ms. Yoon was in Corona when she visited the website. During the visit, Ms. Yoon's keystrokes, mouse clicks, and other electronic communications—including the entry of her payment card information—were intercepted in real time and were disclosed to Defendants Lululemon and QM through the wiretap. Ms. Yoon was unaware at the time that her keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to QM, nor did Ms. Yoon consent to the same.

5. Defendant Lululemon, USA Inc. is a company incorporated under the laws of Nevada with its principal place of business at 1818 Cornwall Avenue, Vancouver, British Columbia, Canada V6J 1C7.

6. Lululemon does business throughout California and the entire United States.

7. Lululemon USA, Inc. owns and operates the Website.

8. Defendant Quantum Metric, Inc. is a Delaware corporation with its principal place of business at 10807 New Allegiance Drive, Suite 155, Colorado Springs, Colorado 80921.

9. QM is a marketing software-as-a-service ("SaaS") company.

10. QM provides a feature called "Session Replay," which is at issue here and described more fully below. At all relevant times here, Lululemon has used QM's "Session Replay" product on the Website.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

12. This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing

business in this State, and Plaintiff's claims arise out of each of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

13. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### I. Overview Of The Wiretaps

14. Defendant QM develops a software of the same name that provides marketing analytics.

15. One of QM's features is called "Session Replay," which purports to help businesses improve their website design and customer experience.

16. Session replays are "millisecond-level chunks of data – for example, representing the coordinates of a user's mouse and associated click/tap actions – being streamed and interpreted as visuals."  QM says that Session Replay allows companies to "to pull up any user who had visited [a] website and watch their journey as if [the company] was standing over their shoulder."  A company can "see every click, every tap and exactly what the website responded with – an error, a success message, or nothing."

17. QM says its Session Replay feature "capture[s] all the metadata behind the replay— like user platform, API calls, and network details—as well as dozens of out of the box events and errors, plus the custom ones you'll configure in our UI."

18. The below screenshot shows how the Session Replay interface works, and shows such electronic communications as what a user clicked on, when a user reloaded a page, and where a user's mouse pointer is located:

//

//

//



19. QM notes that "[o]nce data is captured, it's sent encrypted via a forward secrecy SSL connection, to the Quantum Metric cloud service, hosted in a secured Google Compute cloud."

20. QM's website includes a marketing video that discusses the Session Replay feature. The video touts that companies can "[s]ee actual customer interactions." The marketing presentation then shows a mock mobile user interacting with a website. The video shows what items the user viewed and added to their cart:

//
//
//
//
//
//
//



21. The marketing presentation then proceeds to show where exactly the mock user clicked on the website:



22. Technology like QM's Session Replay feature is not only highly intrusive, but dangerous. A 2017 study by Princeton University found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers. The research notes that this wasn't simply the result of a bug, but rather insecure practices. Thus, session recording technologies such as QM's can leave users vulnerable to data leaks and the harm resulting therefrom.

23. QM's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

24. One of QM's partners is Defendant Lululemon.

25. Lululemon utilizes QM's software on the Website.

26. Lululemon knows that QM's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays QM to supply that information.

27. In fact, Lululemon admits that it spies on users accessing the Website using QM's software. For instance, after a user views a product on the Website, Lululemon will send a user an email such as the following, which says that Lululemon "see[s] you [the user] looking":

//
//
//
//
//
//
//
//
//
//
//



28. Pursuant to an agreement with QM, Lululemon enabled QM's software by voluntarily embedding QM's software code on the Website.

29. As currently deployed, QM's software, as employed by Lululemon, functions as a wiretap.

**II.     Defendants Wiretapped Plaintiff's Electronic Communications**

30. In or about April 2020, Ms. Yoon visited Lululemon.com and made a purchase.

31. During that visit, and upon information and belief, the Session Replay feature in QM's software created a video capturing each of Plaintiff's keystrokes and mouse clicks on the website. The QM wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device.

32. QM's recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Website.

33. When users access the Website and make a purchase, they enter their PII. QM's software captures these electronic communications throughout each step of the process.

34. QM's software captures, among other things:
   (a) The user's mouse clicks;
   (b) The user's keystrokes;
   (c) The user's email address;
   (d) The user's shipping and billing address;
   (e) The user's payment card information, including card number, expiration date, and CVV code;
   (f) The user's IP address;
   (g) The user's their location at the time of the visit; and
   (h) The user's browser type and the operating system on their devices

35. Crucially, Defendant Lululemon does not ask users, including Plaintiff, whether they consent to being wiretapped by QM. Users are never actively told that their electronic communications are being wiretapped by QM, nor does Lululemon's Privacy Policy disclose as much (not that users had notice of the Privacy Policy anyway).

36. Therefore, users like Plaintiff never agree or are never given the option to agree to the Privacy Policy when using the Website, nor are they on notice of the Privacy Policy.

37. Neither Plaintiff nor any Class member consented to being wiretapped on the Website, nor to have their communications recorded and shared with QM. Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; (ii) the

Privacy Policy did not disclose the wiretapping or QM; and (iii) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

## CLASS ACTION ALLEGATIONS

38. Plaintiff seeks to represent a class of all California residents who visited the Website, and whose electronic communications were intercepted or recorded by QM. Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

39. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

40. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and invaded Plaintiff's privacy rights in violation of the California Constitution; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

41. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had her electronic communications intercepted and disclosed to QM through the use of QM's wiretaps.

42. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends

to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

43. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

44. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

45. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

47. To establish liability under section 631(a), Plaintiff need only establish that Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable,

> or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

48. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

49. QM's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

50. At all relevant times, by using QM's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication

between Plaintiff and Class Members on the one hand, and Lululemon's Website on the other hand.

51. At all relevant times, by using QM's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

52. Defendants aided, agreed with, and conspired with each other to implement QM's technology and to accomplish the wrongful conduct at issue here. In addition, Lululemon employed QM to accomplish the wrongful conduct at issue here.

53. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing QM's wiretaps on the Website. Nor have Plaintiff nor Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

54. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

55. Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiff continue to be at risk because she frequently uses the internet, including for the purpose of shopping, and she continues to desire to use the internet for that purpose. Defendant QM provides its software, including the Session Replay feature, to many other website operators who offer a wide array of services. For many websites that Plaintiff may or is likely to visit in the future, she has no practical way to know if her website communications will be monitored or recorded by QM.

56. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

# COUNT II
## Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 635

57. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

59. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

60. At all relevant times, by implementing QM's wiretaps, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

61. QM's code is a "device" that is "primarily or exclusively designed" for eavesdropping. That is, the QM's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

62. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing QM's wiretaps.

63. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Invasion Of Privacy Under California's Constitution

64. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

66. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

67. At all relevant times, by implementing QM's wiretaps on Lululemon's Website, each Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

68. Plaintiff and Class Members had a reasonable expectation that their PII and other data would remain confidential and that Defendants would not install wiretaps on the Website.

69. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing QM's wiretaps on the Website.

70. This invasion of privacy is serious in nature, scope and impact.

71. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

72. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

| | | |
|---|---|---|
| 1 | Dated: November 19, 2020 | Respectfully submitted, |
| 2 | | **BURSOR & FISHER, P.A.** |
| 3 | | |
| 4 | | By: */s/ Joel D. Smith*<br>Joel D. Smith |
| 5 | | L. Timothy Fisher (State Bar No. 191626) |
| 6 | | Joel D. Smith (State Bar No. 244902)<br>1990 North California Boulevard, Suite 940 |
| 7 | | Walnut Creek, CA  94596<br>Telephone: (925) 300-4455 |
| 8 | | Facsimile:  (925) 407-2700<br>E-Mail: ltfisher@bursor.com |
| 9 | | jsmith@bursor.com |
| 10 | | *Attorneys for Plaintiff* |