1  PURVI G. PATEL (CA SBN 270702)
   PPatel@mofo.com
2  MATTHEW E. LADEW (CA SBN 318215)
   MLadew@mofo.com
3  JOVANNA RENEE BUBAR (CA SBN 329277)
   JBubar@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
5  Los Angeles, California 90017-3543
   Telephone: 213.892.5200
6  Facsimile: 213.892.5454

7  Attorneys for Defendant
   QUANTUM METRIC, INC.
8
   ANGELA CHRISTINE AGRUSA (CA SBN 131337)
9  Angela.agrusa@us.dlapiper.com
   DAVID B. FARKAS (CA SBN 257137)
10 David.farkas@us.dlapiper.com
   DLA PIPER LLP (US)
11 2000 Avenue of the Stars Suite 400
   Los Angeles, CA 90067-4704
12 Tel. 310.595.3000
   Fax 310.595.3300
13
   Attorneys for Defendant
14 LULULEMON USA INC.

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18 | MARY YOON, individually and on | Case No. 5:20-cv-02439-JWH-SHK
   | behalf of all others similarly situated, |
19 | | **DEFENDANTS LULULEMON**
   |                  Plaintiff, | **USA INC. AND QUANTUM**
20 | | **METRIC, INC.'S NOTICE OF**
   |         v. | **MOTION AND MOTION TO**
21 | | **DISMISS PLAINTIFF'S CLASS**
   | LULULEMON USA INC. and | **ACTION COMPLAINT;**
22 | QUANTUM METRIC, INC., | **MEMORANDUM OF POINTS**
   | | **AND AUTHORITIES IN**
23 |                  Defendants. | **SUPPORT**
24 | | Date:      April 9, 2021
   | | Time:      9:00 a.m.
25 | | Judge:     Hon. John W. Holcomb
   | | Ctrm:      2
26
27 | | Complaint filed:  Nov. 19, 2020
28

---

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on April 9, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of this Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendants Lululemon USA, Inc. and Quantum Metric, Inc. will and hereby do move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' Class Action Complaint with prejudice because Plaintiff fails to state any claim for relief under the California Invasion of Privacy Act and for invasion of privacy under the California Constitution.

This motion is based on this Notice; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Purvi G. Patel, and Declaration of David B. Farkas; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented to the Court.

This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on February 1, 2021.  (Declaration of Purvi G. Patel ¶ 2; Declaration of David B. Farkas ¶ 2.)

Dated:  February 8, 2021          MORRISON & FOERSTER LLP


By:  */s/ Purvi G. Patel*
Purvi G. Patel
**Attorneys for Defendant**
**Quantum Metric, Inc.**


Dated:  February 8, 2021          DLA PIPER LLP (US)


By: */s/ David B. Farkas*
David B. Farkas
**Attorneys for Defendant**
**Lululemon USA, Inc.**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................1

II. SUMMARY OF ARGUMENT ...............................................................1

III. BACKGROUND ...................................................................................3

    A.  What Quantum's Platform Actually Does and How Lululemon Uses It. ...........................................................................................3

    B.  Allegations Related to Plaintiff Yoon. ...........................................5

IV. LEGAL STANDARD .............................................................................6

V.  ARGUMENT..........................................................................................7

    A.  Plaintiff Fails to State a Claim Under CIPA Section 631 (Count 1)...............................................................................................7

        1.  Both Quantum and Lululemon were parties to Plaintiff's alleged communication ..................................................7

        2.  Quantum's platform did not collect the "contents" of Plaintiff's purported communication .........................10

        3.  Quantum's platform does not intercept communications "in transit" ..................................................................12

        4.  Lululemon's use of Quantum's services is disclosed in Lululemon's privacy policy .........................................15

    B.  Plaintiff Lacks the Right to Sue and Standing to Assert a CIPA Section 635 Claim and Fails to State Such a Claim (Count 2). ...........18

        1.  Section 635 does not provide a private right of action .............18

        2.  Plaintiff lacks Article III standing to assert a claim under Section 635.............................................................19

        3.  Even if Plaintiff could enforce Section 635, Quantum's platform is not a device primarily or exclusively designed for eavesdropping..........................................20

        4.  Even if Quantum's platform were a "device," Lululemon's conduct does not violate Section 635 .................21

    C.  Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution (Count 3). ..............................................22

        1.  There is no legally protected privacy interest here ..................22

        2.  Plaintiff does not demonstrate a reasonable expectation of privacy ..........................................................25

        3.  The alleged conduct does not amount to an egregious or offensive breach of privacy............................................27

VI. CONCLUSION.......................................................................................28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................6, 12

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020).................................................7, 11

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ..................................................15

*Cabral v. Supple, LLC*,
   No. EDVC 12-85-MWF,
   2012 WL 12895825 (C.D. Cal. Oct. 3 2012) .........................................23

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ................................................................19

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018)....................................................7

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012) ..............................................11

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008).................................................................................20

*DirecTV, Inc. v. Treworgy*,
   373 F.3d 1124 (11th Cir. 2004) ...............................................................19

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) .....................................................................6

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).............................................................................21

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) (*Facebook I*) ..........................................20

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) (*Facebook II*)...................................20, 26

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) (*Facebook III*),
  *petition for cert. filed*, Nov. 25, 2020 (No. 20-727) .................................7, 9, 22

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) ...........................................................................27, 28

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
  868 F. Supp. 2d 983 (E.D. Cal. 2012) ....................................................................3

*Fredenburg v. City of Fremont*,
  119 Cal. App. 4th 408 (2008) ................................................................................23

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015).....................................................................10

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019)........................................................23, 24, 26

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014)..................................................................21, 28

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) ..........................................................................22, 23, 25, 27

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)...................................................................28

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018),
  *cert. denied*, *Hagan v. Khoja*, 139 S. Ct. 2615 (2019) .................................3, 10

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ................................................................................12

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-RMW,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .................................................. 19

*London v. New Albertson's Inc.*,
   No. 08-CV-11732008,
   WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) ............................................... 24

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................. 21, 22, 28

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ........................................................................ 20

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................................. 6

*Membrila v. Receivables Performance Mgmt., LLC*,
   No. 09-cv-2790,
   2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ..................................................... 8

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..................................................... 25, 26

*People v. Ratekin*,
   212 Cal. App. 3d 1165 (1989) ........................................................................... 9

*Powell v. Union Pac. R.R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................................... 7

*Revitch v. New Moosejaw, LLC*,
   No. 18-cv-06827-VC,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................. 19

*Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) .................................................. 8, 15

*Rosenow v. Facebook, Inc.*,
   No. 19-cv-1297-WQH-MDD,
   2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ................................................. 12

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008),
   *aff'd*, 380 F. App'x 689 (9th Cir. 2010) .......................................................... 28

*Sheski v. Shopify (USA) Inc.*,
   No. 19-cv-06858-HSG,
   2020 WL 2474421 (N.D. Cal. May 13, 2020)..................................................26

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)................................................................19, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................3, 10

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ...........................................................14

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) .............................................................11

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) .............................................................11

*In re Vizio, Inc., Consumer Privacy, Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................12

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014)..............................................23, 24, 25

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...........................................................11

**Statutes & Other Authorities**

Cal. Bus. & Prof. Code § 22575 *et seq.* ....................................................15

Cal. Penal Code § 631..............................................................*passim*

Cal. Penal Code § 631(a) ..............................................................12

Cal. Penal Code § 635..............................................................*passim*

Cal. Penal Code § 635(a) ..............................................................18

Cal. Penal Code § 637.2(a) ............................................................18

Federal Rule of Civil Procedure 12(b)(1) ................................................19

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

Federal Rule of Civil Procedure 12(b)(6) ................................................................6

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case against Lululemon USA, Inc. ("Lululemon") and Quantum Metric, Inc. ("Quantum") is one of twenty-four almost identical lawsuits filed by Plaintiff's counsel seeking to criminalize the use of ubiquitous web analytics tools. All of these cases assert the same statutory and common law claims for invasion of privacy, based on the novel theory that the routine use of these tools constitutes an illegal "wiretap."

As Plaintiff alleges, Lululemon — like all of the other businesses sued by Plaintiff's counsel — uses the web analytics tools at issue (a script embedded in its website) to understand and improve its website's functionality.  One tool Lululemon uses to accomplish that goal is Quantum's "Session Replay" technology, which reconstructs certain aspects of a visitor's time on Lululemon's website to allow Lululemon, for example, to diagnose and correct any errors the visitor encounters.  Any personally identifying information captured by the "Session Replay" tool is pseudonymized and encrypted field by field before leaving the user's device (e.g., computer), so there is no way for Quantum to tie a particular "session" to a particular visitor by reviewing the collected data.  Only Lululemon, which exclusively holds the decryption key, can decrypt and re-identify the information.  And, contrary to Plaintiff's allegations, sensitive information like payment card information, is not captured.

Plaintiff's attempt to criminalize this behavior on the grounds that it constitutes illegal "eavesdropping" should be rejected, and her claims under the California Invasion of Privacy Act (CIPA), Cal. Penal Code sections 631 and 635, and for invasion of privacy under California's constitution should be dismissed.

### II.    SUMMARY OF ARGUMENT

***Plaintiff's CIPA Claims.***  Plaintiff's Section 631 claim fails for multiple

1   reasons. *First*, both Lululemon and Quantum fit within the well-established party

2   exception to CIPA, as both were parties to the alleged "communication"

3   (Plaintiff's alleged visit to and purchase on Lululemon's website). *Second*,

4   Plaintiff fails plausibly to allege that the "contents" of her "communication" were

5   intercepted at all, let alone intercepted "in transit." And *third*, Lululemon discloses

6   in its Privacy Policy that it uses analytics services like Quantum's and that it

7   collects certain aspects of a customer's visit to its website. As such, Plaintiff

8   manifested her assent to the capture of the alleged information.

9        Plaintiff's claim under Section 635 is equally unsuccessful, as there is no

10  private right of action under that section and Plaintiff lacks Article III standing to

11  bring a claim even if she could. Moreover, by Plaintiff's own admission,

12  Quantum's platform is for "marketing analytics"; as such, it does not constitute a

13  "device" primarily or exclusively designed for eavesdropping.

14       ***Plaintiff's Invasion of Privacy Claim.*** Plaintiff also fails plausibly to allege

15  that Lululemon's use of Quantum's platform meets the "high bar" required to state

16  a claim for invasion of privacy under the California Constitution. Plaintiff was on

17  notice that Defendants were collecting the information at issue, which she

18  voluntarily provided when she decided to make a purchase on Lululemon's

19  website. As noted, Quantum's platform does not collect any highly sensitive or

20  confidential information, like credit card information, and any other manually

21  entered personally identifying information (PII) that is captured is encrypted before

22  it leaves the user's device, with only Lululemon having the ability to decrypt it.

23  Courts have consistently held that the collection (and disclosure, which Plaintiff

24  does not even allege occurred here) of the type of information captured by

25  Quantum's platform does not constitute the egregious breach of the social norms

26  necessary to establish an invasion of privacy claim.

27       For these reasons, the Court should dismiss Plaintiff's Complaint with

28

1  prejudice.

2  **III.   BACKGROUND**

3           **A.   What Quantum's Platform Actually Does and How
4                   Lululemon Uses It.**

5           Quantum creates software that allows companies to understand a customer's

6  experience on their websites.  (*See* Compl. ¶¶ 14–21.)  Companies use Quantum's

7  platform to, for example, discover and resolve technical issues that frustrate

8  customers and impact their ability to complete their intended transactions, help

9  customers with customer service requests, and respond to customer feedback..

10  (Request for Judicial Notice ("RJN"), Ex. A at 5 (Abstract); Compl. ¶ 16.)[1]

11  Quantum thus helps companies identify what works and what doesn't on their

12  websites, and ensure a better user experience for anyone visiting their websites.

13          Quantum's software does not "record the user" or provide anyone other than

14  the owner of the website with access to personally identifiable information (PII).

15  As Plaintiff alleges, Quantum's platform uses "millisecond-level chunks of data"

16  to reconstruct a customer's experience during a visit to a company's website.

17  (Compl. ¶ 16.)  But the reconstruction is just that — a reconstruction, not a

18  recording.  This reconstruction (i.e., Session Replay) can display "mouse

19  movements, scrolling" and "errors and events" such as a link that does not work or

20  an error code at checkout.  (RJN Ex. B at 31.)[2]

21          [1] "Court[s] have [] found the contents of patents to be the appropriate subject of
22  judicial notice because patents are documents issued by the U.S. Patent and
     Trademark Office, a source whose accuracy cannot be reasonably questioned."
23  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983,
     990 (E.D. Cal. 2012).  Defendants accordingly request the Court take judicial
24  notice of certain of Quantum's patents, as set forth in their Request for Judicial
     Notice.

25          [2] "[C]ourts must consider the complaint in its entirety," including "documents
26  incorporated into the complaint by reference, and matters of which a court may
     take judicial notice."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.
27  308, 322 (2007).  The incorporation-by-reference doctrine "prevents plaintiffs from
     selecting only portions of documents that support their claims, while omitting
28  portions of those very documents that weaken — or doom — their claims."  *Khoja*

Contrary to Plaintiff's allegations, however, the Session Replay *cannot* display any payment card information.  (*See* Compl. ¶ 34(e).)  As stated explicitly on Quantum's website at the time Plaintiff filed her Complaint, "there are clear situations when sensitive data should not be captured, for example, personally identifiable information (PII) such as . . . credit card numbers."  (RJN Ex. B at 36.)  "Quantum Metric *automatically blocks capture of sensitive data*," and businesses like Lululemon "can easily set up additional data that should never be captured."  (*Id.* (emphasis added).)  As for the limited universe of user-entered data that a company may want captured, "for example, a user's name and address or a purchase order number," Quantum encrypts it, which pseudonymizes the data.  (*Id.*)  This anonymization and encryption happens on the user's device *before* any data is transmitted from the user's device.  (*See* RJN Ex. C at 17 (6:33–35) ("[T]he capture agent can strip sensitive information before transmitting the event records to the server-side web session storage engine"); *see also* Compl. ¶ 19.)  Further, as Quantum described it to customers on its website:  "[T]o protect identifiable data and stay compliant with [privacy laws], we use public / private key pair encryption, and *only you* own the private key to decrypt sensitive data."  (RJN Ex. B at 36.)  The graphic below illustrates the encryption process:

---

*v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied*, *Hagan v. Khoja*, 139 S. Ct. 2615 (2019).  Here, Plaintiff's entire description of Quantum's software is based on what she elected to include from Quantum's website (Compl. ¶¶ 14–21); it is proper for the Court to consider the portions she chose not to include.  Defendants accordingly request the Court take judicial notice of certain portions of Quantum's website, as set forth in their Request for Judicial Notice.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532



(*Id.* at 37.)

**B.      Allegations Related to Plaintiff Yoon.**

Mary Yoon is a California resident who alleges that in April 2020 she visited Lululemon's website and made a purchase.  (Compl. ¶ 4.)  As part of this visit, Plaintiff alleges that she submitted her payment card information to Lululemon through its website.  (*Id.*)  Plaintiff alleges that her "communications" with the website were "intercepted in real time" and disclosed to Lululemon and Quantum

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

1  through a "wiretap."  (*Id.*)[3]

2      Plaintiff does not allege that Quantum did anything with her

3  "communications" other than make them available to Lululemon, the very entity

4  with which Plaintiff directly interacted.  Plaintiff also does not allege that Quantum

5  or Lululemon sold or otherwise disclosed her "communications" to any third

6  parties, or that she was injured or otherwise affected in any way by the alleged

7  conduct.  Nonetheless, she asserts claims for violation of Sections 631 and 635 of

8  the California Invasion of Privacy Act and for invasion of privacy under the

9  California Constitution.  (Compl. ¶¶ 45–72.)

10  **IV.   LEGAL STANDARD**

11      A complaint must be dismissed for failure to state a claim under Federal

12  Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable

13  legal theory or has not alleged sufficient facts establishing a claim to relief that is

14  "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

15  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Eichenberger v. ESPN, Inc.*,

16  876 F.3d 979, 982 (9th Cir. 2017).  "[C]onclusory allegations without more are

17  insufficient to defeat a motion to dismiss . . . ."  *McGlinchy v. Shell Chem. Co.*,

18  845 F.2d 802, 810 (9th Cir. 1988).  Thus, the Court must not assume the truth of

19  legal conclusions merely because they are pleaded in the form of factual

20  allegations, nor should it accept as true allegations contradicted by judicially

21  noticeable facts.  *Iqbal*, 556 U.S. at 677–79; *Twombly*, 550 U.S. at 555

22  ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

23  requires more than labels and conclusions, and a formulaic recitation of the

24  elements of a cause of action will not do" (second alteration in original).).

25

26

27  _____

   [3] Plaintiff's allegation that Lululemon uses Quantum's software for email
   marketing is unsupported and unsupportable.  (*See* Compl. ¶ 27.)

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.    ARGUMENT

### A.    Plaintiff Fails to State a Claim Under CIPA Section 631 (Count 1).

Plaintiff's Section 631 claim fails for at least four independent reasons: (1) Quantum and Lululemon were both parties to the communication; (2) Quantum's platform does not collect "contents" of communications as defined by CIPA; (3) Quantum's platform does not collect communications "in transit" as defined by CIPA; and (4) Plaintiff agreed to Lululemon's privacy policy, which discloses Lululemon's use of Quantum's services.

Preliminarily, Defendants note that the "analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (quoting *Underhill v. Kornblum*, No. 16–CV–1598–AJB–WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017)); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (analysis of communication's "contents" is the same under both statutes). Defendants accordingly cite cases analyzing both CIPA and the federal Wiretap Act.

### 1.    Both Quantum and Lululemon were parties to Plaintiff's alleged communication

Both the Wiretap Act and CIPA contain "exemption[s] from liability for a person who is a 'party' to the communication . . . ." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (*Facebook III*), *petition for cert. filed*, Nov. 25, 2020 (No. 20-727); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants."). This exemption from liability applies even when a party to a communication records the communication without the knowledge or consent of another party.

1   In *Membrila v. Receivables Performance Mgmt., LLC*, the plaintiff brought a

2   CIPA Section 631 claim arising out of multiple phone conversations that the

3   defendant recorded and monitored without notifying the plaintiff or obtaining his

4   consent.  No. 09-cv-2790, 2010 WL 1407274, at *1 (S.D. Cal. Apr. 6, 2010).  The

5   court found that the defendant could not be liable because it was a party to the

6   conversation and Section 631 "applies only to eavesdropping by a third party and

7   not to recording by a participant to a conversation."  *Id*. at *2.  Similarly, in *Rogers*

8   *v. Ulrich*, the defendant used a tape recorder to record a phone conversation

9   without the plaintiff's knowledge or consent and then shared the recording with

10  others.  52 Cal. App. 3d 894, 898–99 (1975).  The court concluded that the

11  defendant could not be held liable under Section 631 because he was a party to the

12  conversation.  *Id*.  These cases are analogous, except unlike *Membrila* and *Rogers*,

13  Quantum did not share the communication at issue with anyone other than

14  Lululemon (which was also a party to the communication), and, as discussed

15  below, Plaintiff was on notice that her communication may be recorded.[4]  Further,

16  the capture of visitors' communications with Lululemon's website is simply the

17  modern-day equivalent of the defendants' recording of telephone conversations in

18  *Membrila* and *Rogers*, or even more aptly, a sales associate observing a shopper in

19  a brick-and-mortar retail store and offering to help the shopper if a need arises.

20  Here, based on Plaintiff's own allegations, both Quantum and Lululemon

21  were parties to her purported April 2020 "communication" with Lululemon's

22  website.  Plaintiff alleges that she visited Lululemon's website, where Quantum's

---

23

24  [4] Plaintiff may argue that Lululemon is liable under Section 631 as someone "who aids, agrees with, employs, or conspires with" anyone to violate the Section.

25  *See* Cal. Penal Code § 631.  But this argument necessarily fails because as established, Quantum did not violate Section 631.  Thus, Lululemon could not

26  have "aid[ed], agree[d] with, employ[ed], or conspire[d] with" Quantum to violate the Section.  Moreover, Lululemon and Quantum's "customer-service provider"

27  relationship does not amount to a conspiracy to violate Section 631 as no agreement between them involves any unlawful action under Section 631.

28

code was voluntarily and intentionally embedded by Lululemon, and provided information to make a purchase.[5]  (Compl. ¶¶ 4, 26, 28.)  The sole function of Quantum's script is to sit within the code on Lululemon's website and recognize, collect, and analyze visitor interactions with the website so that Lululemon can better understand the functionality of its website.  (Compl. ¶ 15.)  Plaintiff nowhere alleges, nor could she, that Quantum shared her data with anyone other than Lululemon.[6]

Moreover, the presence and function of Quantum's script on Lululemon's website, and thus Quantum's status as a party to any "communication" a visitor may have with the website, is conspicuously disclosed in numerous parts of Lululemon's Privacy Policy, which was prominently displayed to Plaintiff (and other website visitors) on each page of the website and at checkout.  (*See* RJN Ex. D at 68 (stating "we may allow others to provide analytics services . . . on our behalf" that "use cookies, web beacons, device identifiers, and other tracking

---

[5] That *Lululemon* embedded Quantum's script on its website further supports Quantum's status as a party to the communication because "wiretapping" is defined by courts interpreting CIPA to mean "intercepting communications by an *unauthorized connection* to the transmission line." *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989) (first emphasis added).  There is no "unauthorized connection" here because, as noted and as Plaintiff alleges, Lululemon voluntarily and intentionally embedded Quantum's script onto its website.

[6] This is one of the distinguishing factors between this case and *Facebook III*, on which Defendants anticipate Plaintiff will rely.  There the court concluded that Facebook was *not* a party to the "communications" at issue:  logged-out Facebook users' browsing histories at a plethora of different third-party websites. *Facebook III*, 956 F.3d at 596. Notably, Facebook collected this information *unilaterally* through the use of Facebook plug-ins on various websites.  *Id.* at 598, 607–08.  (There were no allegations that the third-party website owners had access to the data collected by Facebook.)  Here, as noted above, Quantum acted at Lululemon's behest to capture visitors' interactions with Lululemon's website alone and only for the purpose of sharing that information with Lululemon. Moreover, visitors to Lululemon's website were conspicuously notified their interactions on Lululemon's website were being collected; in contrast, in *Facebook III*, the plaintiff alleged that Facebook collected logged-out users' communications after affirmatively telling users it would not do so. *Id.* at 602–03.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

technologies which collect information about your use of" Lululemon's website).)[7]

Finally, Plaintiff's interpretation of Section 631 is also problematic from a policy standpoint.  Under Plaintiff's interpretation, any business that hires a service to host its website (along with web hosting companies themselves) is liable for criminal eavesdropping.  Likewise, any business using Google's ubiquitous search functionality on its website would also be liable.  For example, the Central District of California utilizes a search function "Enhanced by Google" to allow visitors to search its website.  When a visitor types a search word in the search box, the search is sent to Google's servers to process.  Plaintiff's theory of liability would mean that both the Court and Google are violating Section 631, as a user of the search function would be sharing its inquiry with Google.  Plaintiff's theory would also criminalize the use of third-party vendors for payment processing, security services, fraud protection, cloud computing, or any of the other myriad software services businesses routinely use to power and enhance the functionality of their websites.  Put simply, Plaintiff's novel interpretation of CIPA targets the very way in which the internet and e-commerce function.

## 2.    Quantum's platform did not collect the "contents" of Plaintiff's purported communication

Plaintiff's Section 631 claim fails for the additional reason that Quantum's platform did not access the "contents" of her purported communication. Section 631 prohibits only the "unauthorized access of the 'contents' of any

---

[7] Plaintiff explicitly refers to and relies on Lululemon's Privacy Policy in the Complaint, characterizing the information it purportedly does (and does not) disclose.  (*See* Compl. ¶¶ 35–37.)  Courts in the Ninth Circuit routinely consider website privacy policies at the motion to dismiss stage where, as here, a plaintiff's claim depends on the language of the privacy policy and it is referenced in the complaint. *See, e.g.*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015); *see also Tellabs, Inc.*, 551 U.S. at 322; *Khoja*, 899 F.3d at 1002. Accordingly, Defendants request the Court take judicial notice of Lululemon's Privacy Policy, as set forth in their Request for Judicial Notice.

communication." *Brodsky*, 445 F. Supp. 3d at 127 (quoting Cal. Penal Code § 631(a)).  The Ninth Circuit has explained, in analyzing the Wiretap Act, that "the term 'contents' refers to the intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014).  The "contents" of a communication does not include, however, "record information regarding the characteristics of the message that is generated in the course of the communication," such as the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device; passwords and user IDs; and other basic identification and address information. *Id.*; *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Brodsky*, 445 F. Supp. 3d at 127.

Plaintiff alleges Defendants captured her keystrokes, mouse clicks, IP address, browser type, operating system, and location at the time of her visit to Lululemon's website as well as the date and time of her visit and the duration of her visit.  (Compl. ¶¶ 2, 31.)  All of this information is nonactionable "record information," *i.e.*, "information regarding the characteristics of the message" rather than the "intended message conveyed by the communication."  *See In re Zynga Privacy Litig.*, 750 F.3d at 1106–09 (user's Facebook ID and the address of the webpage from which the user's request to view another webpage was sent "does not constitute the contents of a communication"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012) ("[T]he term contents does not include location information.").

Plaintiff also alleges (incorrectly) that Quantum's software collects her payment card information.  While the manual entry of such information may constitute the "contents" of Plaintiff's purported communication, Quantum's platform *does not* capture payment card information.  (RJN Ex. B at 36.)  In

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

addition, while Plaintiff alleges that Quantum's software collects users' email addresses and shipping and billing addresses, she does not allege that it collected *her* email address and/or shipping and billing address.  (Compl. ¶¶ 2, 4, 31, 34.)  Even if she did, this information is "record" information, and in any event, would be encrypted and pseudonymized on the user's browser before any data is transferred off the user's device such that it too is never "accessed" by Quantum's platform.  (RJN Ex. B at 36; Compl. ¶ 19.)

Accordingly, because Quantum's platform did not access the "contents" of Plaintiff's purported communication, her Section 631 claim fails.

### 3.  Quantum's platform does not intercept communications "in transit"

Section 631 makes it unlawful to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*."  Cal. Penal Code § 631(a) (emphasis added).  For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).  The communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival."  *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).

Plaintiff alleges that Defendants "read or attempted to read or learn the contents or meaning of" her communications "while the electronic communications were in transit."  (Compl. ¶ 51.)  This allegation is nothing more than "a formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.  For this reason alone, Plaintiff's Section 631 claim should be dismissed.  *See Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WQH-MDD, 2020 WL 1984062, at *7–8 (S.D. Cal. Apr. 27, 2020) ("Rosenow's allegation that Yahoo intercepted Rosenow's communications during transit are conclusory."); *In*

sf-4405532

1  *re Vizio, Inc., Consumer Privacy, Litig.*, 238 F. Supp. 3d 1204, 1227–28 (C.D. Cal.

2  2017) (granting motion to dismiss where plaintiffs made only conclusory

3  allegations of the purported interception during transmission).

4        Further, Plaintiff cannot allege interception even if she tried.  As discussed

5  above, any information that arguably constitutes the "contents" of her

6  communication is encrypted and anonymized while it was on her device and before

7  it was transmitted from her device.  (*See* RJN Ex. C at 58 (7:19–25) ("The user

8  interaction data can follow a similar path as for DOM modifications detailed above

9  in block **213** for the capture agent identifying the DOM node of the target events,

10  in block **230** stripping sensitive information, in block **231** coalescing the data, in

11  block **232** compressing the data, and in block **233** sending the data.").)

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



FIG. 2

21
22   (RJN Ex. C at 43.)

23          Accordingly, Quantum's platform could not have "read or attempted to read

24   or to learn the contents or meaning" of any communication "in transit" because the

25   "communication" is accessed while on the user's device and is pseudonymized and

26   encrypted before being transmitted from the user's device. *See, e.g.*, *Theofel v.*

27   *Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (no "interception" where

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

1  defendant gained unauthorized access to plaintiff's emails which were already

2  delivered to recipients and stored electronically by plaintiff's internet service

3  provider); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153–54

4  (C.D. Cal. 2007) (defendant did not "intercept" plaintiff's messages where he

5  configured plaintiff's server so that the messages were copied and forwarded from

6  the server to defendant's email account because the emails were in electronic

7  storage when copied).

8              **4.     Lululemon's use of Quantum's services is disclosed in**
9                       **Lululemon's privacy policy**

10         The gravamen of a Section 631 claim is that a third party surreptitiously

11  intruded upon a conversation.  "'Eavesdropping' is the problem the Legislature

12  meant to deal with" in enacting Section 631.  *Rogers*, 52 Cal. App. 3d at 899.  To

13  "'[e]avesdrop' is . . . 'to listen secretly to what is said in private.'"  *Id.* (quoting

14  Webster's 7th New Collegiate Dictionary (1972)).  But there is nothing

15  surreptitious or hidden about Defendants' data collection, as alleged.

16         Lululemon's Privacy Policy explicitly disclosed to Plaintiff, and users like

17  her, that Lululemon collects data regarding visitors' interactions with its website

18  and uses service providers, like Quantum, that aid in this collection and analyze

19  these interactions.  (*See* RJN Ex. D at 67.)  Indeed, the functionality of a modern

20  website depends on the use of such service providers — so much so that in 2003,

21  almost 40 years after CIPA was enacted, the California Legislature enacted the

22  California Online Privacy Protection Act (CalOPPA), Cal. Bus. & Prof. Code

23  § 22575 *et seq.*, to regulate how website operators collect user data and share that

24  data.  CalOPPA requires website operators to publish a privacy policy that informs

25  visitors of (i) the categories of PII collected by the website, (ii) the categories of

26  third parties with whom the PII may be shared, and (iii) whether and how a visitor

27  can opt out of such sharing.  It further requires that a hyperlink to the policy be

28

1    present on the website's home page.

2         Consistent with CalOPPA, Lululemon maintains a link to its Privacy Policy

3    on each page of its website, including the "Place Order" button upon checkout.

4

5    

6

7

8    (*See* RJN, Ex. E at 72.)

9         Lululemon's Privacy Policy discloses that Lululemon may engage in the

10   exact actions Plaintiff alleges in the Complaint.  For example, the Privacy Policy

11   informs website visitors that Lululemon shares visitors' personal data with its

12   service providers:

13        **<u>DISCLOSURE OF PERSONAL DATA</u>**

14        We share personal data for the purposes described below:

15                         *            *            *

16        <u>With our Service Providers</u>.  We share personal data with unaffiliated
     companies or individuals we hire or work with that perform services on
17   our behalf, including . . . analytics services. These third-party service
     providers have access to personal data needed to perform their services
18   but may not use it for other purposes.

19

20   (*See* RJN Ex. D at 67.)

21        The Privacy Policy further discloses that Lululemon deploys certain tracking

22   technologies to collect analytics information about user's interactions with the

23   website:

24        **<u>ADVERTISING AND ANALYTICS SERVICES PROVIDED BY
     OTHERS</u>**

25

26        We may allow others to provide analytics services . . . on our behalf
     across the web . . . .  These entities may use cookies, web beacons,
27   device identifiers, and other tracking technologies which collect
     information about your use of the Services and other websites and

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532

1
2
3
4

> applications.  This information may be used by lululemon and others to, among other things, analyze and track data, determine the popularity of certain content, deliver advertising and content targeted to your interest on our Services and other websites, and better understand your online activity.

5
6
7
8
9

(*Id.* at 68.)  Relatedly, the policy also informs users under the heading "Categories of Personal Data Disclosed and Categories of Third-Party Recipients" that "[i]n the preceding 12 months," Lululemon has disclosed "identifiers," "internet and electronic network activity information," and "commercial information" with "data analytics providers.  (*Id.* at 69.)

10
11

And, finally, the Privacy Policy discloses that Lululemon deploys tracking technology to collect information about its customers' visits to the website:

12

### PERSONAL DATA WE COLLECT AUTOMATICALLY

13
14
15

> We automatically collect certain personal data when you access and use our Services or shop in our stores.  The types of information we collect may include:

16

*     *     *

17
18
19
20
21
22
23
24

> Networking and device information such as your browser type, IP address, and operating system version, language settings; Information about your activity on our Services, such as access times, pages viewed, the routes by which you access our Services, your use of any hyperlinks available within our Services; Information about your purchases or transactions with us, including records of products or services you have purchased, returned or are considering purchasing from us; Information collected via cookies, web beacons, and other tracking technologies, including internet service provider (ISP), Mobile Advertising ID, media access control (MAC) address, or identifiers associated with browser cookies, web beacons, and similar technologies we deploy on our Services . . . .

25

(*Id.* at 66 (title emphasis in original).)

26
27

In other words, Lululemon disclosed to users like Plaintiff the conduct of which she now complains.  For example, Plaintiff alleges that Quantum "secretly

28

observe[d] and record[ed] website visitors' keystrokes, mouse clicks, and other electronic communications[.]"  (Compl. ¶ 1.)  But the Privacy Policy discloses that Lululemon uses "tracking technologies which collect information about your use of the [website] and other websites and applications."  (*See* RJN Ex. D at 68.)  It further discloses that Lululemon will "share *identifiers . . . internet and electronic network activity information* . . . [and] *commercial information* . . . with . . . data analytics providers . . . ."  (*Id.* at 69.)  This is precisely the data on which Plaintiff bases her claim.  (Compl. ¶ 4 (alleging that "mouse clicks" and "payment card information" were captured).)  Given that Lululemon fully discloses that it, and its service providers like Quantum, collect information from visitors' interactions with Lululemon's website, there is nothing surreptitious about their actions and it cannot amount to wiretapping under Section 631.

> ### B.   Plaintiff Lacks the Right to Sue and Standing to Assert a CIPA Section 635 Claim and Fails to State Such a Claim (Count 2).

Section 635 is a criminal statute that targets "[e]very person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any [wiretapping] device."  Plaintiff cannot enforce this statute.  Nor does she or can she allege injury as a result of the statutory violation.  Moreover, even apart from these insurmountable hurdles, Quantum's platform is not an eavesdropping "device" under the statute.

> ### 1.   Section 635 does not provide a private right of action

CIPA provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation."  Cal. Penal Code § 637.2(a).  But a private person cannot possibly be "injured by a violation" of Section 635, which criminalizes the manufacture, possession, sale, or transport of "any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another."  *Id.* § 635(a).  The *use* of such

a device *might* injure a private person, and Section 631 would give that person recourse.  But Section 635 is enforceable only by the State.  Although no California court appears to have addressed this issue, several federal courts have done so in the context of the analogous Wiretap Act provision.  *See In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016) (collecting cases); *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004) ("Possession of a pirate access device alone, although a criminal offense, creates nothing more than conjectural or hypothetical harm to [plaintiff].").  Those courts conclude that the related provision "does not establish a private right of action — it addresses only criminal liability."  *In re Lenovo*, 2016 WL 6277245, at *7.  So too with Section 635.[8]

### 2. Plaintiff lacks Article III standing to assert a claim under Section 635

On a motion to dismiss for lack of standing under Rule 12(b)(1), a court must dismiss a complaint if the plaintiff does not satisfy Article III's standing requirements.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A plaintiff must have "suffered an injury in fact" to have standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  That is, she "must show that [s]he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'" from the alleged violation.  *Id.* at 1548 (citation omitted).  A defendant's actions must have "affect[ed] the plaintiff in a personal and individual

---

[8] Defendants anticipate that Plaintiff will rely on *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), where the court declined to dismiss a Section 635 claim because the plaintiff had "alleged injuries traceable to [the defendant's] ***possession and use*** of the device."  *Id.* at *3 (emphasis added).  The problem with this language is immediately apparent: Section 635 has nothing to do with the ***use*** of a device.  It criminalizes only manufacturing, possession, sale, or transporting.  Here, the only thing that Plaintiff claims harmed her is Lululemon's alleged "use" of Quantum's software.  (Compl. ¶¶ 31–32.)

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532

1  way." *Id.* (citation omitted).  And a plaintiff that demonstrates standing for a

2  violation of one section of a statute does not meet automatically the standing

3  requirement for a violation of another section of that same statute.  *See Davis v.*

4  *Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008).  Here, as noted, Plaintiff

5  does not allege injury from the alleged Section 635 violation.  Claiming only that

6  Defendants manufactured, sold, or possessed a "device" does not establish any

7  harm to Plaintiff different from any member of the public, so the requisite "injury

8  in fact" required for standing under Article III is absent.  *See Spokeo*, 136 S. Ct. at

9  1547.

10
11  **3.    Even if Plaintiff could enforce Section 635, Quantum's platform is not a device primarily or exclusively designed for eavesdropping**

12  Section 635 applies only to "device[s]" that are "primarily or exclusively"

13  designed for eavesdropping.  Cal. Penal Code § 635.  Plaintiff asserts that

14  Quantum's "code" is a "device" for which Section 635 imposes criminal liability.

15  (*See* Compl. ¶ 61.)  Plaintiff's conclusory assertion is insufficient.  If the "code" is

16  truly a "device" as Plaintiff contends, "Plaintiff[] must include facts in [her]

17  pleading to show why it is so."  *See In re Facebook Internet Tracking Litig.*, 140 F.

18  Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*").  Indeed, given that CIPA is a

19  criminal statute, any ambiguity in the meaning of the word "device" should be

20  interpreted narrowly under the rule of lenity.  *See LVRC Holdings LLC v. Brekka*,

21  581 F.3d 1127, 1134 (9th Cir. 2009).

22  Nor do Plaintiff's allegations allow for the plausible inference that

23  Quantum's "code" is "primarily or exclusively" used for eavesdropping.  First,

24  Quantum's platform's primary purpose is to provide, as Plaintiff herself puts it,

25  "marketing analytics" to "help businesses improve their website design and

26  customer experience."  (Compl. ¶¶ 14–15.)  This type of data collection is "part of

27  [the] routine internet functionality" that makes digital commerce possible.  *See In*

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

*re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities."); *cf. In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (examining defendant's collection and disclosure of users' data); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (defendant did not violate users' rights by disclosing users' browsing histories to third parties).  Moreover, as explained above, the code is not used ***at all*** for eavesdropping.

### 4. Even if Quantum's platform were a "device," Lululemon's conduct does not violate Section 635

Even if Quantum's platform could be considered a device under Section 635, Lululemon did not engage in any of the actions prohibited by the statute.  Section 635 imposes liability on anyone who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" a device "primarily or exclusively designed or intended for eavesdropping."  Cal. Penal Code § 635.  The only term in that list that could plausibly apply to Lululemon is "possesses."  But the general term "possesses" in Section 635 should be read in context of the more specific terms around it to be limited to the actual manufacturing chain and distribution and sales channels.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (when a "more general term follows more specific terms in a list, the general term is usually understood 'to embrace only objects similar in nature to those objects enumerated by the preceding specific words'" (citation omitted)).  If the legislature intended to extend liability to the end user of such a "device," it could have easily included more definitive terms like "purchases" or "uses."  It did not.  Thus, "possesses" should be read to include only those entities or individuals involved in the manufacture,

sf-4405532

distribution, or sale of a prohibited device, which does not include Lululemon here.

**C.      Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution (Count 3).**

Plaintiff cannot meet the "high bar" courts have consistently required to state a claim for invasion of privacy under the California Constitution. *See Low*, 900 F. Supp. 2d at 1025 (noting that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim" (citation omitted)).  To state a claim, Plaintiff must allege (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion "'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook III*, 956 F.3d at 601 (citation omitted).  These elements are "to be used to 'weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.'" *Low*, 900 F. Supp. 2d at 1024 (quoting *Loder v. City of Glendale*, 14 Cal. 4th 846 (1997)).  Plaintiff fails plausibly to allege any of these required elements.

**1.      There is no legally protected privacy interest here**

"Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion or interference ('autonomy privacy')." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994).  Plaintiff fails to allege any facts establishing a legally protected privacy interest in either "information" or "autonomy" privacy.  Instead, Plaintiff merely regurgitates the standard outlined in *Hill*.  (Compl. ¶ 66.)

**Information privacy.**  In the context of information privacy, "the California

sf-4405532

1   Constitution protects only the 'dissemination or misuse of *sensitive* and

2   *confidential* information.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040

3   (N.D. Cal. 2014) (citation omitted).  Here, Plaintiff does not allege that Defendants

4   *disseminated or misused* any of her information, sensitive and confidential or

5   otherwise.  Rather, she alleges only that certain information was "recorded" or

6   "intercepted" by Quantum's software and used to "improve [Lululemon's] website

7   design and customer experience."  (Compl. ¶¶ 2, 4, 15.)  All of this information

8   was captured solely for Lululemon's business purposes, and, as discussed below,

9   there is no question that Plaintiff intentionally and willingly provided the

10  information to Lululemon when she visited Lululemon's website and entered in the

11  information needed to make a purchase.

12          Nor does the information that Plaintiff alleges Quantum's platform captured

13  during her visit, such as her key strokes, mouse clicks, IP address, location at the

14  time of her visit to the website, browser type, and operating system, or, the

15  information she alleges Quantum captures from other users, such as email address

16  and billing and shipping address, qualify as *sensitive and confidential*.  *See In re*

17  *Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (finding

18  general allegations of collecting geolocation data insufficient to establish a privacy

19  interest); *Cabral v. Supple, LLC*, No. EDVC 12-85-MWF (OPx), 2012 WL

20  12895825, at *3 (C.D. Cal. Oct. 3 2012) ("The disclosure of mere contact

21  information, such as names and addresses, does not unduly interfere with one's

22  right to privacy"); *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 423

23  (2008) ("A person's general location is not the type of core value, informational

24  privacy explicated in *Hill*.").

25          Even if this information were considered *sensitive and confidential*, because

26  Quantum's platform pseudonymizes and encrypts PII at the time of capture,

27  Plaintiff would still have no legally protected privacy interest in this information.

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532

1   *See London v. New Albertson's Inc.*, No. 08-CV-1173 H(CAB),

2   2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (no legally protected privacy

3   interest in de-identified information).[9]  Moreover, as explained, Plaintiff's payment

4   card information, the only allegedly captured information that might qualify as

5   sensitive and confidential, is in fact *not* captured by Quantum's platform.  (RJN

6   Ex. B at 36.)

7       Additionally, courts have rejected claims based on information privacy

8   where, as here, "the . . . Defendant[s] only tracked and collected data during use of

9   [Defendants'] services."  *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at

10  198.

11      **Autonomy privacy.**  "While the California Constitution protects autonomy,

12  it does not 'create an unbridled right of personal freedom of action that may be

13  vindicated in lawsuits.'"  *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at

14  198.  Accordingly, courts generally discuss autonomy privacy only in the context

15  of *bodily* autonomy and have not extended autonomy privacy to include data

16  autonomy.  *Id.*; *see also In re Yahoo Mail*, 7 F. Supp. 3d at 1039 ("[T]he Court

17  construes Plaintiffs' claim as asserting only an information privacy interest, as

18  California courts have discussed autonomy privacy in the context of cases alleging

19  *bodily* autonomy").  Plaintiff alleges no infringement of her bodily autonomy.

20      Accordingly, Plaintiff fails to plausibly to allege a legally protected privacy

21  interest.

22

23

24

25      [9] Email addresses and billing and shipping addresses, which Plaintiff alleges
26  are captured by Quantum's software but does <u>not</u> allege were collected from her
    (Compl. ¶¶ 2, 4, 31, 34), are not only de-identified but also encrypted at the time of
27  capture on the user's browser before transmission from the user's device (RJN
    Ex. B at 33).
28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

### 2. Plaintiff does not demonstrate a reasonable expectation of privacy

To determine whether there is a "reasonable expectation of privacy," courts "must take into account any accepted community norms" including the "customs, practices, and physical settings surrounding particular activities" as well as "advance notice to Plaintiff" and "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38; *Hill*, 7 Cal. 4th at 36–37 (1994). "The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38.

Here, Plaintiff *voluntarily* provided the information in question while on notice of its collection by both Lululemon and Quantum, and, as such, manifested her consent to Defendants' collection of this information. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[I]f voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person" (internal quotation marks and citation omitted).). As discussed further below, Plaintiff has not alleged a reasonable expectation of privacy in any of the information she claims Defendants collected for several reasons.

***First***, Plaintiff was on notice that the information at issue would be collected when she engaged in the purported communication with Lululemon's website. Lululemon explicitly discloses in its Privacy Policy that Lululemon allows "others to provide analytics services" on its behalf, like Quantum, and that these entities may use "tracking technologies which collect information about your use of the Services and other websites and applications." (RJN Ex. D at 68.) The Privacy Policy discloses that the following types of information may be "automatically"

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

collected when users "access and use" Lululemon's services:

- Networking and device information, such as browser type, IP address, operating system version;
- Information about a user's activity such as access times, pages viewed and the routes by which the user accessed Lululemon's services;
- Transaction history; and
- Location information.

(*Id.* at 66.)  Lululemon also explicitly discloses that it collects personal data users provide directly when purchasing products and shares various categories of personal data with data analytics providers.  (*Id.* at 66–68.)

     ***Second,*** there is no reasonable expectation of privacy in information *voluntarily* shared with a third party, where, as here, the information was collected only for Lululemon's use and was used for only the purposes Lululemon disclosed. *See Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (even voluntarily supplying information that is then used for purposes *beyond* what was expected when the information was supplied "does not rise to the level of being 'highly offensive to a reasonable person'" (citation omitted)); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198–99 (dismissing invasion of privacy claims because Google's "profile" of a user was "only as specific as their" voluntary "use of Google services"); *Opperman*, 205 F. Supp. 3d at 1072 ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion" (citing *Hill*, 7 Cal. 4th at 26).).  Here, Plaintiff *voluntarily* interacted with and provided information to Lululemon and Quantum (as Lululemon's service provider) by visiting Lululemon's website.

     ***Third,*** it is common practice and "part of routine internet functionality" for websites to "embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries, and other utilities."  *See Facebook II*, 263 F. Supp. 3d at 846.  That Plaintiff's counsel has brought twenty-

1   four identical suits against other businesses arising out of their use of web analytics

2   services like Quantum's further illustrates that this practice is an "accepted

3   community norm," not an infringement on a reasonable expectation of privacy.

4         Accordingly, Plaintiff fails plausibly to allege any reasonable expectation of

5   privacy.

6                  **3.     The alleged conduct does not amount to an egregious**

7                        **or offensive breach of privacy**

8         Invasions of privacy must be "sufficiently serious in their nature, scope, and

9   actual or potential impact to constitute an egregious breach of the social norms

10   underlying the privacy right." *Hill*, 7 Cal. 4th at 37.  The type of conduct that is

11   considered serious enough to rise to the level of an egregious or offensive breach

12   of privacy generally involves the public disclosure or improper use of highly

13   personal medical information.  *See, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.

14   App. 4th 986, 991–92 (2011) (providing as examples "[CHP] officers' Internet

15   dissemination of photographs of the decapitated corpse of an accident victim[,]"

16   the "gratuitous disclosure of a patient's HIV status," or the "improper use of

17   confidential mental health records").

18         Plaintiff alleges, at most, that Defendants *captured* (not disseminated or

19   disclosed) her mouse clicks, keystrokes, payment card information, IP address,

20   location at the time of her visit to Lululemon's website as well as the date and time

21   of the visit, browser type, and operating system on her device.  (Compl. ¶¶ 2, 4,

22   31.)  As discussed, Defendants never captured, let alone disclosed, Plaintiff's credit

23   card information.[10]  (RJN Ex. B at 36.)  Even if they had, the capture and

24   disclosure of even non-encrypted highly personal information, such as social

25   security numbers, does not constitute an egregious breach of the social norms to

---

26         [10] Lululemon, of course, directly captured Plaintiff's payment card

27   information in order to process Plaintiff's purchase.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

1    establish an invasion of privacy claim.  *Low*, 900 F. Supp. 2d at 1025; *Ruiz v. Gap,*

2    *Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th

3    Cir. 2010).

4         Courts in this circuit have consistently held that the ***disclosure*** of the type of

5    information Quantum's platform allegedly captured from Plaintiff, as well as

6    information like email and physical addresses which Plaintiff alleges the software

7    captures (but does not allege was collected from her) does not constitute an

8    egregious breach of the social norms to establish an invasion of privacy claim.  *See*

9    *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 985 (dismissing

10   intrusion upon seclusion claim because disclosure of online browsing habits and

11   search queries to third parties did not meet "high bar for the requisite intrusion that

12   is highly offensive to a reasonable person" (internal quotation marks and citation

13   omitted)); *Low*, 900 F. Supp. 2d at 1025 (disclosure of digital identification

14   information such as users' browsing histories "does not meet the standard set by

15   California courts" to establish a claim for invasion of privacy); *In re iPhone*

16   *Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure to

17   third parties of unique device identifier numbers, personal data, and geolocation

18   information from Plaintiffs' iDevices without Plaintiffs' knowledge or consent

19   does not constitute an egregious breach of social norms); *Folgestrom*, 195 Cal.

20   App. 4th at 992 (defendant's collection of plaintiff's address without his

21   knowledge or permission, and use of it to mail him coupons and other

22   advertisements, is not an egregious breach of social norms, but rather "routine

23   commercial behavior").

24        Accordingly, Defendants' alleged conduct does not amount to an egregious

25   breach of the social norms as is required to establish an invasion of privacy claim.

26   **VI.   CONCLUSION**

27        For the foregoing reasons, the Court should grant Defendants' motion to

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
sf-4405532

1  dismiss Plaintiff's Class Action Complaint and dismiss the Complaint with

2  prejudice.

3  Dated:  February 8, 2021                    MORRISON & FOERSTER LLP

4

5                                              By:  */s/ Purvi G. Patel*

6                                                   Purvi G. Patel

7                                              ***Attorneys for Defendant***

                                               ***Quantum Metric, Inc.***

8

9  Dated:  February 8, 2021                    DLA PIPER LLP (US)

10

11                                             By:  */s/ David B. Farkas*

                                                    David B. Farkas

12

13                                             ***Attorneys for Defendant***

                                               ***Lululemon USA Inc.***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

sf-4405532

**ECF ATTESTATION**

I, Purvi G. Patel, am the ECF User whose ID and password are being used to file the foregoing document.  In accordance with Local Rule 5-4.3.4, concurrence in the filing of this document has been obtained from, David B. Farkas, counsel for Defendant Lululemon USA, Inc., and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: February 8, 2021                     MORRISON & FOERSTER LLP

By:  */s/ Purvi G. Patel*
                                                            Purvi G. Patel

                                                    ***Attorneys for Defendant***
                                                    ***Quantum Metric, Inc.***

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

sf-4405532