1  PURVI G. PATEL (CA SBN 270702)
   PPatel@mofo.com
2  MATTHEW E. LADEW (CA SBN 318215)
   MLadew@mofo.com
3  JOVANNA RENEE BUBAR (CA SBN 329277)
   JBubar@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
5  Los Angeles, California 90017-3543
   Telephone: 213.892.5200
6  Facsimile: 213.892.5454

7  Attorneys for Defendant
   QUANTUM METRIC, INC.
8
   ANGELA CHRISTINE AGRUSA (CA SBN 131337)
9  Angela.agrusa@us.dlapiper.com
   DAVID B. FARKAS (CA SBN 257137)
10 David.farkas@us.dlapiper.com
   DLA PIPER LLP (US)
11 2000 Avenue of the Stars Suite 400
   Los Angeles, CA 90067-4704
12 Tel. 310.595.3000
   Fax 310.595.3300
13
   Attorneys for Defendant
14 LULULEMON USA INC.

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18 | MARY YOON, individually and on       | Case No. 5:20-cv-02439-JWH-SHK
   | behalf of all others similarly situated, |
19 |                                       | **DEFENDANTS LULULEMON**
   |                      Plaintiff,       | **USA INC. AND QUANTUM**
20 |                                       | **METRIC, INC.'S NOTICE OF**
   |              v.                       | **MOTION AND MOTION TO**
21 |                                       | **DISMISS PLAINTIFF'S FIRST**
   | LULULEMON USA INC. and               | **AMENDED COMPLAINT;**
22 | QUANTUM METRIC, INC.,                | **MEMORANDUM OF POINTS**
   |                                       | **AND AUTHORITIES IN**
23 |                      Defendants.      | **SUPPORT THEREOF**
24 |                                       | Date:    May 28, 2021
   |                                       | Time:    9:00 a.m.
25 |                                       | Judge:   Hon. John W. Holcomb
   |                                       | Ctrm:    2
26 |                                       |
27 |                                       | Complaint filed: Nov. 19, 2020
   |                                       | FAC filed:       Feb. 25, 2021
28

---

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on May 28, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of this Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendants Lululemon USA, Inc. and Quantum Metric, Inc. will and hereby do move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing Plaintiff's First Amended Class Action Complaint with prejudice because Plaintiff fails to state any claim for relief under the California Invasion of Privacy Act, the federal Wiretap Act, or for invasion of privacy under the California Constitution.

This motion is based on this Notice; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Purvi G. Patel, and Declaration of David B. Farkas; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented to the Court.

This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on March 8 and 19, 2021.  (Declaration of Purvi G. Patel ¶ 2.)

Dated:  March 25, 2021        MORRISON & FOERSTER LLP


By:  */s/ Purvi G. Patel*
          Purvi G. Patel
          ***Attorneys for Defendant***
          ***Quantum Metric, Inc.***

Dated:  March 25, 2021        DLA PIPER LLP (US)


By:  */s/ David B. Farkas*
          David B. Farkas
          ***Attorneys for Defendant***
          ***Lululemon USA, Inc.***

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ARGUMENT ........................................................................... 2

III.    BACKGROUND ................................................................................................. 3

    A.     Allegations Related to Plaintiff Yoon ..................................................... 3

    B.     What Quantum's Platform Actually Does and How it Is Used ........... 3

IV.     LEGAL STANDARD ......................................................................................... 6

V.      ARGUMENT ...................................................................................................... 6

    A.     Plaintiff Fails to State a Claim Under CIPA Section 631 .................... 6

        1.     Both Quantum and Lululemon were parties to Plaintiff's alleged communication ..................................................................... 7

        2.     Quantum's platform did not access the "contents" of Plaintiff's purported communication ......................................... 11

        3.     Quantum's platform does not intercept communications "in transit" .............................................................................. 13

        4.     Lululemon discloses its use of Quantum's services in its privacy policy .............................................................................. 15

    B.     Plaintiff's Federal Wiretap Act § 2512 and CIPA § 635 Claims Fail for Multiple Reasons ..................................................................... 21

        1.     There is no private right of action for violations of either statute ..................................................................................... 22

        2.     Plaintiff lacks Article III standing to assert a claim under either statute ..................................................................................... 24

        3.     Even if Plaintiff could enforce either statute, Quantum's platform is not a device primarily or exclusively designed for eavesdropping .............................................................................. 25

        4.     Even if Quantum's platform were a "device," Lululemon's conduct does not violate either statute ............... 26

    C.     Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution ................................................................... 27

        1.     There is no legally protected privacy interest here ................... 27

        2.     Plaintiff does not demonstrate a reasonable expectation of privacy ........................................................................... 29

        3.     The alleged conduct does not amount to an egregious or offensive breach of privacy .......................................................... 32

VI.     CONCLUSION................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................6

*Austin-Spearman v. AARP and AARP Servs., Inc.*,
   119 F. Supp. 3d 1 (D.D.C. 2015)....................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................6

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020)........................................7, 11

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007)..........................................15

*Cabral v. Supple, LLC*,
   No. EDVC 12-85-MWF, 2012 WL 12895825 (C.D. Cal. Oct. 3
   2012)...................................................................................................28

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)........................................................24

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018)............................................6

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012)......................................12

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)........................................................................24

*DirecTV, Inc. v. Treworgy*,
   373 F.3d 1124 (11th Cir. 2004)................................................23, 24

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017)............................................................6

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..................................................................................26

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) (*Facebook I*) ...........................25

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) (*Facebook II*)..................25, 32

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) (*Facebook III*),
   *petition for cert. filed*, Nov. 25, 2020 (No. 20-727) ...................7, 8, 27

*Flowers v. Tandy Corp.*,
   773 F.3d 585 (4th Cir. 1985) .......................................................................23

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ...........................................................32, 34

*Fredenburg v. City of Fremont*,
   119 Cal. App. 4th 408 (2008) ....................................................................28

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................................................20

*In re Google Location Hist. Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019) ...........................................28, 29, 31

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014)...................................................25, 34

*Heeger v. Facebook, Inc.*,
   No. 19-cv-06399-JD, 2020 WL 7664459 (N.D. Cal. Dec. 24, 2020) ..........29, 32

*Hiam v. HomeAway.com, Inc.*,
   267 F. Supp. 3d 338 (D. Mass. 2017).....................................................20

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ...........................................................27, 28, 29, 32

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)................................................34

*Javier v. Assurance IQ, LLC et al.*,
  No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9,
  2021) ............................................................................................. 19, 20

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ..................................................................13

*In re Lenovo Adware Litig.*,
  No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27,
  2016) ..........................................................................................................23

*London v. New Albertson's Inc.*,
  No. 08-CV-1173 H(CAB), 2008 WL 4492642 (S.D. Cal. Sept. 30,
  2008) ..........................................................................................................29

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)...........................................25, 27, 33, 34

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ..................................................................23

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ................................................................25

*McCoy v. Alphabet, Inc.*,
  No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ...........32, 33

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ....................................................................6

*Membrila v. Receivables Performance Mgmt., LLC*,
  No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ................9, 10, 21

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016).........................................30, 31

*Peavy v. WFAA-TV, Inc.*,
  221 F.3d 158 (5th Cir. 2000) ..................................................................23

*People v. Ratekin*,
  212 Cal. App. 3d 1165 (1989) ................................................................8

*Powell v. Union Pac. R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................................7

*Revitch v. New Moosejaw, LLC*,
  No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23,
  2019) ..............................................................................23

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ..............................................7, 9, 10, 21

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689
  (9th Cir. 2010).........................................................................33

*Sheski v. Shopify (USA) Inc.*,
  No. 19-cv-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13,
  2020) ..............................................................................31

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).................................................................24

*Svenson v. Google, Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014).........................................11, 12

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ..........................................................15

*In re Transcon Lines*,
  58 F.3d 1432 (9th Cir. 1995), *as amended on denial of reh'g* (July
  10, 1995) ..............................................................................8, 9

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ..........................................................11

*United States v. Reed*,
  575 F.3d 900 (9th Cir. 2009) ..........................................................11

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014).....................................27, 29, 30

*In re: Zoom Video Commcn's Inc. Privacy Litig.*,
  No. 20-CV-02155-LHK, 2021 WL 930623 (N.D. Cal. Mar. 11,
  2021) ..............................................................................28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ........................................................11, 12

**Statutes**

18 U.S.C.
   § 2511(1)................................................................................................22
   § 2512......................................................................................*passim*
   § 2520(a)..........................................................................................22, 23

Cal. Bus. & Prof. Code § 22575 *et seq.* ...............................................15

Cal. Civ. Code
   § 1798.105...........................................................................................16
   § 1798.110...........................................................................................16
   § 1798.120...........................................................................................16
   § 1798.140(v)........................................................................................8

Cal. Penal Code
   § 631........................................................................................*passim*
   § 635........................................................................................*passim*
   § 637.2(a).............................................................................................23

Fed. R. Civ. P.
   12(b)(1)................................................................................................24
   12(b)(6)..................................................................................................6

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

sf-4445522

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Rather than oppose Defendants Lululemon USA, Inc. and Quantum Metric, Inc.'s motion to dismiss, Plaintiff amended her Complaint.  None of her amendments, however, changes the fact that there is no "wiretap" here.  Nor, as Defendants have explained to Plaintiff, does the technology at issue operate the way Plaintiff alleges.[1]  This case is one of at least two dozen nearly identical lawsuits filed by Plaintiff's counsel seeking to criminalize the use of ubiquitous web analytics tools.[2]  All of the cases assert the same privacy-related claims based on the novel theory that the routine use of these tools constitutes an illegal wiretap.

Lululemon — like all of the other businesses sued by Plaintiff's counsel — uses the web analytics tool at issue, "Session Replay" (a script embedded in its website), to understand and improve its website's functionality.  Specifically, Quantum's Session Replay technology reconstructs certain aspects of a visitor's time on Lululemon's website to allow Lululemon, for example, to diagnose and correct any errors the visitor encounters.  Any personally identifying information captured by the Session Replay tool is pseudonymized and encrypted field by field before leaving the user's device (*e.g.*, computer).  As such, there is no way for Quantum to personally identify a particular visitor by reviewing the collected data.  Only Lululemon, which exclusively holds the decryption key, can decrypt and potentially identify the user.

Plaintiff's attempt to criminalize the innocuous use of a valuable web

---

[1] Plaintiff confusingly cites to two of Quantum's patents interchangeably. These patents, however, cover different aspects of the technology.  Patent 10,146,752 (FAC ¶¶ 22, 24, 32, 33) explains how the technology conceptually works whereas Patent 10,656,984 (FAC ¶¶ 20, 26, 30, 31, 79) focuses on what the technology can be used for.

[2] The fact that there is nothing unique about the claims in this case is evidenced by Plaintiff's copy and paste error in Paragraph 14 of the First Amended Complaint, in which Plaintiff refers to a website not at issue here, webmd.com.

analytics tool on the grounds that it constitutes illegal "eavesdropping" should be rejected, and her claims for violation of the California Invasion of Privacy Act (CIPA), Cal. Penal Code Sections 631 and 635, for invasion of privacy under California's constitution, and for violation of the federal Wiretap Act, 18 U.S.C. § 2512, should be dismissed with prejudice.

## II.    SUMMARY OF ARGUMENT

*Plaintiff's CIPA and Wiretap Act Claims.*  Plaintiff's CIPA § 631 claim fails for multiple reasons.  First, both Lululemon and Quantum fit within the well-established party exception to CIPA, as both were parties to the purported "communication" (Plaintiff's alleged visit to and purchase on Lululemon's website).  Second, Plaintiff fails plausibly to allege that the "contents" of her "communication" were intercepted at all, let alone intercepted "in transit."  Third, Lululemon discloses in its Privacy Policy that it uses analytics services like Quantum's and that it collects certain aspects of a customer's visit to its website. As such, Plaintiff manifested her assent to the capture of the alleged information. Plaintiff's claims under CIPA § 635 and the Wiretap Act § 2512 are also unavailing, as neither provision of these criminal wiretapping statutes provides a private right of action.  Even if they did, Plaintiff lacks Article III standing to bring a claim under either statute.  And even if Plaintiff could bring a claim, it would fail, as Quantum's platform is not a wiretapping "device" under either statute, and Lululemon has not engaged in any of the prohibited actions.

*Plaintiff's Invasion of Privacy Claim.*  Plaintiff also fails plausibly to allege that Lululemon's use of Session Replay meets the "high bar" required to state an invasion of privacy claim under the California Constitution.  Plaintiff was on notice that Defendants were collecting the information at issue, which she voluntarily provided when she decided to make a purchase on Lululemon's website.  Quantum's platform does not collect any sensitive or confidential

information (like credit card information) and any personally identifying information that is captured is encrypted before it leaves the user's device, with only Lululemon having the ability to decrypt it.  Courts have consistently held that the collection (and disclosure, which Plaintiff does not allege occurred) of the type of information captured by Quantum's platform does not constitute the egregious breach of the social norms necessary to establish an invasion of privacy claim.

## III.   BACKGROUND

### A.   Allegations Related to Plaintiff Yoon

Plaintiff Mary Yoon is a California resident who alleges that in or about April 2020 she visited Lululemon's website and made a purchase.  (First Amended Complaint ("FAC") ¶ 4, ECF No. 20.)  Plaintiff alleges that her "communications" with the website were "intercepted in real time" and disclosed to Lululemon and Quantum through a "wiretap."  (*Id.*)  Plaintiff does not allege that Quantum did anything with her "communications" other than make them available to Lululemon, the very entity with which Plaintiff directly interacted.  Plaintiff also does not allege that Quantum or Lululemon sold or disclosed her "communications" to any third parties, or that she was injured or otherwise affected in any way by the alleged conduct.  Nonetheless, she asserts claims for violation of §§ 631 and 635 of the California Invasion of Privacy Act, for invasion of privacy under the California Constitution, and for violation of the federal Wiretap Act, 18 U.S.C. § 2512.  (FAC ¶¶ 72-111.)

### B.   What Quantum's Platform Actually Does and How it Is Used

Quantum's platform allows companies to understand a customer's experience on their websites.  (*See* FAC ¶ 17.)  Companies use Quantum's platform to, for example, discover and resolve technical issues that frustrate customers and impact their ability to complete their intended transactions, help customers with customer service requests, and respond to customer feedback.

(Request for Judicial Notice ("RJN"), Ex. A at 7 (Abstract); FAC ¶ 20.)[3]  Quantum thus helps companies identify what works and what doesn't on their websites, and ensure a better user experience for anyone visiting their websites.

Quantum's platform does not "record" the user or provide anyone other than the website owner with access to personally identifiable information.  The platform uses "millisecond-level chunks of data" to reconstruct a customer's experience during a visit to a company's website.  (RJN Ex. F at 76.)[4]  But the reconstruction is just that — a reconstruction, not a recording.  This reconstruction (*i.e.*, Session Replay) can display "mouse movements, scrolling" and "errors and events" such as a link that does not work or an error code at checkout.  (RJN Ex. B at 33.)

Nor is Quantum's platform designed to capture sensitive information.  As Quantum stated explicitly on its website at the time Plaintiff filed this action, "there are clear situations when sensitive data should not be captured, for example, personally identifiable information (PII) such as . . . credit card numbers."  (RJN Ex. B at 38.)  "Quantum Metric *automatically blocks capture of sensitive data*," and businesses like Lululemon "can easily set up additional data that should never be captured."  (*Id.* (emphasis added).)  As for the limited universe of user-entered data that a company may want captured, "for example, a user's name and address or a purchase order number," Quantum encrypts it, which pseudonymizes the data.  (*Id.*)  This anonymization and encryption happens on the user's device *before* any data is transmitted from the user's device.  (*See* RJN Ex. C at 59 (Column 6, Lines 33-35) ("[T]he capture agent can strip sensitive information before transmitting the

---

[3] For the reasons stated in Defendants' concurrently-filed Request for Judicial Notice ("RJN"), the Court may take judicial notice of Quantum's patents.

[4] This language comes from a blog post on Quantum's website that Plaintiff quotes but does not cite.  (*See* FAC ¶ 18.)  As set forth in Defendants' RJN, it is proper for the Court to take judicial notice of Quantum's website.  Although Plaintiff included the quoted language in her Complaint, she omitted it from her FAC, presumably because it is inconsistent with her theory.  (*Compare* Compl. ¶ 16, *with* FAC ¶ 18.)

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

event records to the server-side web session storage engine").[5]  Further, as Quantum described it to customers on its website:  "[T]o protect identifiable data and stay compliant with [privacy laws], we use public / private key pair encryption, and *only you* own the private key to decrypt sensitive data."  (RJN Ex. B at 38 (emphasis in original).)  The graphic below illustrates the encryption process (*id*. at 39):



---

[5] Plaintiff originally cited to Quantum's website to describe Session Replay's functionality in her Complaint.  (Compl. ¶¶ 16, 17.)  To give context to those statements, which describe Quantum's platform in practice, Defendants cited to two of Quantum's patents in moving to dismiss.  In the FAC, however, Plaintiff replaced the website references that were inconsistent with her theory of the case with cherry-picked references from the patents.  In doing so, Plaintiff overlooks the difference between an invention as described by a patent and the actual commercial product of the patentee.  The purpose of a patent is to give the patentee the right to exclude all others from creating anything that is covered by the claims in the patent, and not to conclusively describe the functionality of a commercial product.  Plaintiff's cites, therefore, cannot be accepted as true, and are distinguishable from Defendants' cites, which were wholly consistent with statements on Quantum's website describing Session Replay.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

## IV.   LEGAL STANDARD

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss . . . ." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Thus, the Court must not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (second alteration in original)).

## V.   ARGUMENT

### A.   Plaintiff Fails to State a Claim Under CIPA Section 631

Plaintiff's § 631 CIPA claim fails for at least four independent reasons: (1) Quantum and Lululemon were both parties to the communication; (2) Quantum's platform does not collect "contents" of communications as defined by CIPA; (3) Quantum's platform does not collect communications "in transit" as defined by CIPA; and (4) Plaintiff agreed to Lululemon's privacy policy, which discloses Lululemon's use of Quantum's services.

Preliminarily, Defendants note that the "analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (quoting *Underhill v. Kornblum*, No. 16–CV–1598–AJB–WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017)); *see*

*also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (analysis of communication's "contents" is the same under both statutes). Defendants accordingly cite cases analyzing both CIPA and the Wiretap Act.

### 1. Both Quantum and Lululemon were parties to Plaintiff's alleged communication

Both the Wiretap Act and CIPA contain "exemption[s] from liability for a person who is a 'party' to the communication . . . ." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*"), *petition for cert. filed*, Nov. 25, 2020 (No. 20-727); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (section 631 was intended to address "eavesdropping," which is defined as "to listen secretly to what is said in private," and "only a third party can listen secretly to a private conversation"). "The party exception must be considered in the technical context of [the] case." *Facebook III*, 956 F.3d at 607.

Quantum is a software-as-a-service (SaaS) provider for Lululemon. (FAC ¶¶ 9-10; 39-40.) Plaintiff admits that Lululemon voluntarily and intentionally embedded Quantum's script on its website and that the sole function of this script is to sit within the code on Lululemon's website, recognize and capture visitor interactions with the website, and then supply this information to Lululemon so that Lululemon can better understand the functionality of its website. (FAC ¶¶ 17, 40-41, 43, 80.) Plaintiff does not allege that Quantum independently and surreptitiously embedded its code onto Lululemon's website, acted without authorization from Lululemon in capturing visitor interactions with Lululemon's website, or collected this information for any purpose other than to supply it to

7

Lululemon.[6]  Nor does Plaintiff allege that Quantum shared this information with anyone other than Lululemon.

Accordingly, because Plaintiff admits that she visited and interacted with Lululemon's website where Lululemon voluntarily and intentionally embedded Quantum's script, both Lululemon, and Quantum acting on Lululemon's behalf, were parties to Plaintiff's alleged communications.  Thus, no CIPA "wiretapping" — i.e., "intercepting communications by an *unauthorized connection* to the transmission line" — occurred here.  *See People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989) (first emphasis added).  There can be no "unauthorized" connection when Quantum was intentionally included in the communication, and essentially stands in the shoes of Lululemon.

Additionally, the recently enacted California Consumer Privacy Act of 2018 (CCPA) treats service providers as an extension of a business, and acknowledges that service providers "process[] information *on behalf of* [the] business[.]"  *See* Cal. Civ. Code § 1798.140(v) (emphasis added).  The Ninth Circuit has instructed that, "whenever possible," courts should "attempt to reconcile potential conflicts in statutory provisions."  *In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995), *as amended on denial of reh'g* (July 10, 1995).  The Legislature "must be presumed to have known of its former legislation . . . and to have passed . . . new laws in

---

[6] This is one of the distinguishing factors between this case and *Facebook III*, on which Defendants anticipate Plaintiff will rely.  There the court concluded that Facebook was *not* a party to the "communications" at issue, which were logged-out Facebook users' browsing histories at various third-party websites.  *Facebook III*, 956 F.3d at 596.  Notably, Facebook collected this information *unilaterally* through the use of Facebook plug-ins on the websites and compiled "personal profiles which [were] sold to advertisers to generate revenue."  *Id.* at 596, 598, 607-08.  The plaintiffs further alleged Facebook did so after affirmatively telling users it would not do so.  *Id.* at 602-03.  And there were no allegations that the third-party website owners had access to the data collected by Facebook.  The facts here are inapposite.  Quantum acted at Lululemon's behest to capture visitors' interactions with Lululemon's website alone and only for the purpose of sharing that information with Lululemon.  Moreover, visitors to Lululemon's website were conspicuously notified that their interactions with Lululemon's website were being captured.  (*See*, *infra*, Section V.A.4.)

1   view of the provisions of the legislation already enacted." *See id.* (internal

2   quotations and citations omitted)).  The CCPA's treatment of service providers

3   further supports the conclusion that Quantum is an extension of Lululemon and

4   therefore is a party to the communication at issue.

5        Moreover, the presence and function of Quantum's script on Lululemon's

6   website and Quantum's status as a party to any "communication" a visitor may

7   have with the website, is conspicuously disclosed in numerous parts of

8   Lululemon's Privacy Policy, which was prominently displayed to Plaintiff (and

9   other website visitors) on each page of the website and at checkout.  (*See*, *infra*,

10  Section V.A.4 (citing RJN Ex. D at 70) (stating "we may allow others to provide

11  analytics services . . . on our behalf" that "use cookies, web beacons, device

12  identifiers, and other tracking technologies which collect information about your

13  use of" Lululemon's website).)[7]

14       Plaintiff's allegation that Quantum and Lululemon "recorded" Plaintiff's

15  purported communications does not change the result.  The party exemption

16  applies even when a party to a communication records the communication without

17  the knowledge or consent of another party.  In *Membrila v. Receivables*

18  *Performance Mgmt., LLC*, the plaintiff brought a CIPA § 631 claim arising out of

19  multiple phone conversations that the defendant recorded and monitored without

20  notifying the plaintiff or obtaining his consent.  No. 09-cv-2790, 2010 WL

21  1407274, at *1 (S.D. Cal. Apr. 6, 2010).  The court found that the defendant could

22  not be liable because it was a party to the conversation and § 631 "applies only to

23  eavesdropping by a third party and not to recording by a participant to a

24  conversation."  *Id.* at *2.  Similarly, in *Rogers v. Ulrich*, the defendant used a tape

25  recorder to record a phone conversation without the plaintiff's knowledge or

26

27  ─────────────
    [7] For the reasons stated in Defendants' RJN, the Court may take judicial notice
    of Lululemon's Privacy Policy.

28

consent and then shared the recording with others.  52 Cal. App. 3d at 898-99.  The court concluded that the defendant could not be held liable under § 631 because he was a party to the conversation.  *Id.*  These cases are analogous to the facts at hand — the capture of visitors' communications with Lululemon's website is simply the modern-day equivalent of the defendants' recording of telephone conversations in *Membrila* and *Rogers* (or, even more aptly, a sales associate observing a shopper in a brick-and-mortal retail store and offering to help the shopper if a need arises).  Except unlike *Membrila* and *Rogers*, the communications at issue were not shared or disclosed to individuals or entities that were not parties to the communication, and, in any event, Plaintiff was on notice that her communication may be recorded.

Finally, Plaintiff's interpretation of § 631 is also problematic from a policy standpoint.  Her interpretation criminalizes the use of third-party vendors for error reporting, marketing, payment processing, security services, fraud protection, cloud computing, or any of the other myriad software services businesses routinely use to power and enhance the functionality of their websites.  In fact, under Plaintiff's approach, even Plaintiff's counsel, who, like Lululemon, intentionally embedded the script of a SaaS provider on their website (Google Analytics) to collect certain information about visitors to their website, would be liable for criminal wiretapping.  The information that Plaintiff's counsel collects through their service provider is comparable in many respects to what Plaintiff complains of here, and includes as "examples" the following: "the type of Internet browser you are using, your IP address, the type of computer operating system you are using, search terms you used to find our site, and the domain name of the Web site from which you linked to our site."[8]  Put simply, Plaintiff's novel interpretation of CIPA targets the very way in which the internet and e-commerce function.

---

[8] *See* http://www.bursor.com/privacy/.

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Quantum's platform did not access the "contents" of Plaintiff's purported communication

Plaintiff's § 631 claim fails for the additional reason that Quantum's platform did not access the "contents" of her purported communication. *Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the 'contents' of any communication") (quoting Cal. Penal Code § 631(a)).  The Ninth Circuit explained, in analyzing the Wiretap Act, that "the term 'contents' refers to the intended message conveyed by the communication."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014).  The "contents" of a communication does not include, however, "record information regarding the characteristics of the message that is generated in the course of the communication," such as the origination, length, and time of a telephone call; email, URL, and IP addresses; the geographic location of a mobile device; passwords and user IDs; and other basic identification and address information.  *Id.*; *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Brodsky*, 445 F. Supp. 3d at 127; *Svenson v. Google, Inc.*, 65 F. Supp. 3d 717, 721, 729 (N.D. Cal. 2014).

Plaintiff alleges that Defendants captured her "mouse clicks, keystrokes, scrolls, mouse movements, [and] shipping and billing address" as well as "the date and time of the visit [to Lululemon's website], the duration of the visit, [her] IP address, her location at the time of the visit, her browser type, and the operating system on her device."  (FAC ¶¶ 2, 4, 46.)  She also vaguely alleges that Defendants captured "information about web pages viewed on the Website."  (*Id.* ¶¶ 2, 4.)  All of this information is nonactionable "record information," *i.e.*, "information regarding the characteristics of the message" rather than the "intended message conveyed by the communication."  *See In re Zynga Privacy Litig.*, 750 F.3d at 1106-09 (user's Facebook ID and the address of the webpage

from which the user's request to view another webpage was sent "does not constitute the contents of a communication" nor do email and IP addresses); *Svenson*, 65 F. Supp. 3d at 721, 729 (contact information provided to Google while signing up for Google Wallet service, including names, email address, Google account name, home city and state, ZIP code, and in some instances telephone number, is record information);[9] *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1127 (W.D. Wash. 2012) ("[T]he term contents does not include location information."). Mouse clicks, keystrokes, scrolls, and mouse movements — like information about the webpage a website visitor originated from — similarly constitute information about the characteristics of a communication generated in the course of that communication; they are not the intended message of a communication. Moreover, even if any of this information constituted the contents of a communication, any such information is encrypted and pseudonymized on the user's browser or is collected as de-identified information before being transferred off the user's device such that it too is never "accessed" by Quantum. (RJN Ex. B at 38-39.)

Plaintiff alleges that Quantum's (demonstrably true) assertion "that it encrypts shipping and billing addresses" is "dubious" (FAC ¶ 50), but does not allege that *her* address information was not encrypted. She provides no support for this allegation other than a 2017 blog post (described as a "study by Princeton University researchers") that does not analyze Quantum or its platform and instead involves some of Quantum's purported competitors. (*Id.* ¶¶ 35, 50-53.) Plaintiff does not explain which competitors this blog post relates to or whether these purported competitors even use the same processes and technology as Quantum to provide the web analytics services at issue. Plaintiff also alleges, based on this

[9] The Stored Communications Act at issue in *Svenson* incorporates the Wiretap Act's definition of contents. *See In re Zynga Privacy Litig.*, 750 F.3d at 1104.

same blog post, that Quantum's claim "that it does not capture payment card data" is also "dubious," though Plaintiff removed from the FAC all allegations that her payment card information was captured. (*Id.* ¶ 50; *compare* Compl. ¶¶ 2, 4, 34.)

Accordingly, because Quantum's platform did not access the "contents" of Plaintiff's purported communication, her § 631 claim fails.

### 3. Quantum's platform does not intercept communications "in transit"

Section 631 makes it unlawful to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication" only "while the same is *in transit*." Cal. Penal Code § 631(a) (emphasis added). For a communication "to be 'intercepted' . . . it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).

To support her claim that Quantum's platform captures information "in transit," Plaintiff quotes from Quantum's patents or website to suggest that Quantum captures information "in real-time." (*See, e.g.,* FAC ¶¶ 20, 26, 79.) But that term of art does not suggest anything about whether communications are captured "in transit." As Plaintiff points out, Quantum's technology allows it "to 'aggregate data, in real-time from one or more client devices . . . about interaction with and operation of a website.'" (FAC. ¶ 20.) As the plain language Plaintiff quotes demonstrates, however, the after-collection *aggregation* of data is what occurs in real time, not the collection or capture of any data. The "real-time" after-collection aggregation of data has nothing to do with this lawsuit.

As discussed above, any information that arguably constitutes the "contents" of a communication is either (i) encrypted and anonymized *while it is on the device*

and *before it is transmitted from the device* or (ii) collected as de-identified information.  (*See* RJN Ex. B at 39; *id*. at Ex. C at 60 (Column 7; Lines 19-25.) The figure below illustrates this sequence:



FIG. 2

(RJN Ex. C at 45; *see also id.* at 60 ("The user interaction data can follow a similar path . . ., in block **230** stripping sensitive information, in block **231** coalescing the data, in block **232** compressing the data, and in block **233** sending the data."))

Accordingly, Quantum's platform could not have "read or attempted to read or to learn the contents or meaning" of any communication "in transit" because the "communication" is accessed while on the user's device and is pseudonymized and encrypted before being transmitted from the user's device (or captured in de-identified form).  *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2004) (no "interception" where defendant gained unauthorized access to plaintiff's emails which were already delivered to recipients and stored electronically by plaintiff's internet service provider); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007) (defendant did not "intercept" plaintiff's messages where he configured plaintiff's server so that the messages were copied and forwarded from the server to defendant's email account because the emails were in electronic storage when copied).

### 4.    Lululemon discloses its use of Quantum's services in its privacy policy

Plaintiff's § 631 claim rests on the allegation that Defendants' *surreptitiously* recorded her interactions with Lululemon's website.  (*See* FAC ¶¶ 105, 108.)  But there was nothing surreptitious here:  Lululemon transparently informs users like Plaintiff that it collects information about users' interactions with its website.  Specifically, Lululemon's Privacy Policy explicitly disclosed that Lululemon collects such data and uses service providers (like Quantum) to aid in this collection and analyze these interactions. (*See* RJN Ex. D at 67-71.)

Indeed, the functionality of a modern website depends on the use of such service providers—so much so that in 2003, almost 40 years after CIPA was enacted, the California Legislature enacted the California Online Privacy Protection Act (CalOPPA), Cal. Bus. & Prof. Code § 22575 *et seq.*, to regulate how website operators like Lululemon collect user data and share that data. CalOPPA requires website operators to publish a privacy policy that informs

visitors of (i) the categories of personally identifiable information (PII) collected by the website, (ii) the categories of third parties with whom the PII may be shared, and (iii) whether and how a visitor can opt out of such sharing.  It further requires that a hyperlink to the policy be present on the website's home page.[10]

*Lululemon's Privacy Policy complies with CalOPPA.*  Consistent with CalOPPA, Lululemon maintains a link to its Privacy Policy on each page of its website, including immediately below the "Place Order" button upon checkout.



(FAC ¶ 56; *see also* RJN, Ex. E.)  Plaintiff admits that during her visit to the website she made a purchase.  (FAC ¶¶ 4, 45.)  She was thus affirmatively presented with the above image upon checkout and explicitly informed that "lululemon will use information you submit (including identifiers, commercial information, and internet or other electronic network activity information) to fulfill this request.  To learn more, see our privacy policy and terms of use." (*Id*. ¶ 56 (emphasis in original); *see also* RJN, Ex. E.)  The Privacy Policy itself was hyperlinked and readily accessible to Plaintiff.

Further, the Privacy Policy discloses that Lululemon may engage in the exact actions Plaintiff alleges in the FAC.  For example, the Privacy Policy informs website visitors that Lululemon shares visitors' personal data with its service providers:

---

[10] The CCPA also imposes requirements on businesses like Lululemon to disclose categories of personal information collected and shared with third parties (Cal. Civ. Code § 1798.110), and gives California residents certain rights with respect to that information (*e.g.*, *id*. §§ 1798.105 (right to deletion), 1798.120 (right to opt out of sale)).

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

sf-4445522

**DISCLOSURE OF PERSONAL DATA**

We share personal data for the purposes described below:

*        *        *

<u>With our Service Providers</u>.  We share personal data with unaffiliated companies or individuals we hire or work with that perform services on our behalf, including . . . analytics services. We only share with service providers the personal data that they need to perform services for us.

(*See* RJN Ex. D at 69 (title emphasis in original).)

The Privacy Policy further discloses that Lululemon deploys certain tracking technologies to collect analytics information about user's interactions with the website:

**ADVERTISING AND ANALYTICS SERVICES PROVIDED BY OTHERS**

We may allow others to provide analytics services . . . on our behalf across the web . . . .  These entities may use cookies, web beacons, device identifiers, and other tracking technologies which collect information about your use of the Services and other websites and applications.  This information may be used by lululemon and others to, among other things, analyze and track data, determine the popularity of certain content, deliver advertising and content targeted to your interest on our Services and other websites, and better understand your online activity.

(*Id.* at 70 (title emphasis in original).)  Relatedly, the Policy also informs users under the heading "Categories of Personal Data Collected" and "Categories of Personal Data Disclosed" that "[i]n the preceding 12 months," Lululemon has collected and disclosed "identifiers," "internet and electronic network activity information," geolocation data, audio and visual information, inferences drawn about your preferences," and "commercial information."  (*Id.* at 71.)  The Policy informs users that this information is disclosed to Lululemon's service providers, which as noted above, includes data analytics service providers like Quantum. (*Id.*)

And, finally, the Privacy Policy discloses that Lululemon deploys tracking technology to collect information about its customers' visits to the website:

**PERSONAL DATA WE COLLECT AUTOMATICALLY**

We automatically collect certain personal data when you access and use our Services or shop in our stores.  The types of information we collect may include:

*        *        *

Networking and device information such as your browser type, IP address, and operating system version, language settings; Information about your activity on our Services, such as access times, pages viewed, the routes by which you access our Services, your use of any hyperlinks available within our Services; Information about your purchases or transactions with us, including records of products or services you have purchased, returned or are considering purchasing from us; Information collected via cookies, web beacons, and other tracking technologies, including internet service provider (ISP), Mobile Advertising ID, media access control (MAC) address, or identifiers associated with browser cookies, web beacons, and similar technologies we deploy on our Services . . . .

(*Id.* at 68 (title emphasis in original).)

Lululemon clearly disclosed to Plaintiff the conduct of which she now complains.  For example, Plaintiff alleges that Defendants "secretly observe[d] and record[ed] website visitors' keystrokes, mouse clicks, shipping and billing address, and other electronic communications[.]"  (FAC ¶ 1.)  But the Privacy Policy discloses that Lululemon and its service providers use "tracking technologies which collect information about your use of the [website] and other websites and applications."  (*See* RJN Ex. D at 70.)  It further discloses that Lululemon shares "identifiers, internet and electronic network activity information, commercial information, audio and visual information, geolocation data . . . and other information that [Lululemon] ha[s] derived or inferred about you" with data analytics service providers.  (*Id.* at 71.)  This is precisely the data on which Plaintiff bases her claim.  (FAC ¶ 2 (alleging that "keystrokes, scrolls, mouse

18

1  movements, shipping and billing address" and information about web pages

2  viewed on the Website were captured).)  Given that Lululemon fully discloses that

3  it and its service providers like Quantum, collect information from visitors'

4  interactions with Lululemon's website, there is nothing surreptitious about their

5  actions and it cannot amount to wiretapping under § 631.

6        ***Plaintiff was on notice that her information was being captured.***  Plaintiff

7  attempts to avoid the fact that she was on notice of the alleged "wiretapping" by

8  alleging that (1) she could not have consented to Defendants' actions because the

9  alleged wiretap began the moment she landed on the website (FAC ¶ 58); (2) the

10  Privacy Policy was too inconspicuous (*id.* ¶¶ 55, 56); and (3) any consent was

11  ineffective because the Privacy Policy did not disclose the full scope of

12  Defendants' actions (*id.* ¶ 59).

13        Judge White's recent decision in one of the several dozen cases brought by

14  Plaintiff's counsel is instructive.  In *Javier v. Assurance IQ, LLC et al.*, the plaintiff

15  made the very same arguments Plaintiff makes here.  No. 4:20-CV-02860-JSW,

16  2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) ("Javier argues that his consent

17  was invalid because (1) it occurred after the alleged privacy invasion took place,

18  (2) Javier lacked sufficient notice of the privacy policy, and (3) the privacy policy

19  did not disclose the exact conduct at issue.")  Judge White rejected each argument

20  in turn, and this Court should do the same.

21        ***First***, as to the "timing" argument, Judge White noted that California courts

22  frequently uphold so-called retroactive consent as valid, and noted that the privacy

23  policy in *Javier* was phrased in the present tense, *i.e.*, "'we collect' data when 'you

24  use our Services,' not 'we will collect. . .'"  *Id.*  Lululemon's Privacy Policy is

25  likewise phrased in the present tense: "We share personal data with unaffiliated

26  companies or individuals we hire or work with that perform services on our behalf,

27  including . . . analytics services."  (RJN, Ex. D at 69.)

28

19

***Second***, as to the "notice" argument, Judge White examined adequacy of notice "holistically, not through mechanical application of formatting rules." *Javier*, 2021 WL 940319 at *3.  Here, like in *Javier*, the Privacy Policy appeared immediately below the "Place Order" button.  (FAC ¶ 56.)  The rest of the screen was uncluttered (and contained only the details of Plaintiff's purchase), and the hyperlink was set off in font that contrasted from the webpage background and was underlined to indicate that it was a hyperlink.  (*Id.*; *see also* RJN, Ex. E.)

***Third***, as to the "disclosure" argument, Judge White found that defendant Assurance's "policy clearly indicates that Assurance tracks activity on its website and may use third party vendors to do so."  2021 WL 940319, at *4.  Likewise here, Lululemon's Privacy Policy disclosed that Lululemon tracks activity on its website and may use third parties — like Quantum — to do so.  (RJN, Ex. D at 68-70.)  The Court should reject Plaintiff's attempt to parse the language of the Policy; she cannot avoid the clear disclosure it provides that Lululemon and its service providers collect various information from visitors to Lululemon's website using tracking technologies.[11]

***Finally***, Plaintiff alleges that she did not affirmatively consent to the Privacy Policy.  (FAC ¶¶ 54, 57.)  But this is irrelevant because a party to a communication can record that communication without the other party's knowledge or consent, and here, as noted above, Lululemon and Quantum were both parties to the

---

[11] Plaintiff takes issue with the fact that the Privacy Policy uses the conditional "may" when it states that "[w]e may allow others to provide analytics services . . . on our behalf across the web . . . .  These entities may use cookies, web beacons, device identifiers, and other tracking technologies."  (FAC ¶ 59.)  The word "may," however, is ubiquitous in privacy policies; courts have not hesitated to find that the word puts users on notice of the conduct so described.  *See, e.g., Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1130, 1136 (N.D. Cal. 2015) (finding consent to disclosure where privacy policy stated, "we may share your personal information"); *Austin-Spearman v. AARP and AARP Servs., Inc.*, 119 F. Supp. 3d 1, 11 (D.D.C. 2015) (same); *Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 353 (D. Mass. 2017) (same).  Judge White also rejected this argument in *Javier*. 2021 WL 940319 at *4.

communication at issue.  *See Rogers*, 52 Cal. App. 3d at 899; *Membrila*, 2010 WL

1407274, at *1.  But, in any event, she manifested her consent to the Policy by

using the website and by affirmatively clicking "Place Order" with the knowledge

that "lululemon will use information [she] submit[s] (including identifiers,

commercial information, and internet or other electronic network activity

information) to fulfill [her] request. To learn more, see our privacy policy and

terms of use."  (FAC ¶ 56.)  Plaintiff notably does not allege that she was unaware

of the Privacy Policy.  Nor could she since it was conspicuously disclosed to her

on each page of the website and immediately underneath the "Place Order" button

that she affirmatively clicked.

## B.   Plaintiff's Federal Wiretap Act § 2512 and CIPA § 635 Claims Fail for Multiple Reasons

18 U.S.C. § 2512 and Cal. Penal Code § 635 are analogous statutes that

criminalize the manufacture, assembly, possession, sale, or transfer of wiretap

devices:

| 18 U.S.C. § 2512(1)(b) | Cal. Penal Code § 635 |
|---|---|
| [A]ny person who intentionally **manufactures**, **assembles**, **possesses**, or **sells** any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce . . . shall be fined under this title or imprisoned not more than five years, or both. | Every person who **manufactures**, **assembles**, **sells**, **offers for sale**, **advertises for sale**, **possesses**, **transports**, **imports**, or **furnishes to another** any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. |

Plaintiff cannot enforce either statute, which by their terms are enforceable

21

only by the government.  Even if either statute purported to provide a private right of action, Plaintiff would lack standing to sue, as the manufacture, possession, or sale of wiretapping devices does not and cannot injure Plaintiff.  Moreover, apart from these insurmountable hurdles, Quantum's platform is not an eavesdropping or wiretapping "device" under the statutes and Lululemon has not engaged in any of the prohibited conduct.

> ### 1.    There is no private right of action for violations of either statute

Section 2512 of the Wiretap Act and § 635 of CIPA criminalize the same thing:  the manufacture, assembly, possession, or sale of a wiretapping device. They are separate and distinct from the crime of *using* a wiretap device — the crime for which both statutes *do* provide civil remedies.

***The Wiretap Act.***  The Wiretap Act's private right of action provision, § 2520(a), provides that those whose communications were "intercepted, disclosed, or intentionally used *in violation* of this chapter may" bring a civil action against the person or entity that "engaged in *that violation*."  18 U.S.C. § 2520(a) (emphases added).[12]  "[T]hat violation" refers back to the specifically enumerated violations:  interception, disclosure, and intentional use.  It does not refer to manufacture, assembly, possession, or sale, and thus has nothing to do with § 2512(1)(b), which is the statute Plaintiff invokes.

The circuits to have considered the issue uniformly agree with this reading. As one court explained, "Section 2520(a) provides a civil remedy for the victim of the theft of an electronic communication.  Section 2512(1)(b) provides a criminal punishment for those involved in trafficking devices used for the theft of electronic

---

[12] This language mirrors the verbs used in the Wiretap Act's analog to CIPA § 631, which targets those who "**intercept**[]" communications, "**disclose**[]" the contents of an intercepted communication, or "**use**[]" wiretapping devices.  *See* 18 U.S.C. § 2511(1) (emphases added).

1  communications without need of proof that any person has yet been injured by that

2  illegal commerce." *See DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1126 (11th Cir.

3  2004). "And the phrase 'which engaged *in that violation*' [in § 2520(a)] makes

4  apparent the intent of Congress to limit liability to a certain class of defendants."

5  *Id.* at 1127. In other words, "Congress chose to confine private civil actions to

6  defendants who had 'intercepted, disclosed, or intentionally used [a

7  communication] in violation of" the statute. *Id.*; *see In re Lenovo Adware Litig.*,

8  No. 15-md-02624-RMW, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016)

9  (collecting cases) ("Section 2512, however, does not establish a private right of

10  action — it addresses only criminal liability.").[13]

11      *CIPA.* An almost-identical analysis applies to § 635 of CIPA. CIPA's

12  private right of action provision provides that "[a]ny person who has been injured

13  by a violation of this chapter may bring an action against the person who

14  committed the violation." Cal. Penal Code § 637.2(a). But a private person cannot

15  possibly be "injured by a violation" of § 635, which criminalizes the manufacture,

16  possession, sale, transport, or furnishing — but *not* the use — of "any device

17  which is primarily or exclusively designed or intended for eavesdropping upon the

18  communication of another." *Id.* § 635(a). The *use* of such a device *might* injure a

19  private person, and CIPA § 631 could give that person recourse. But CIPA § 635,

20  like Wiretap Act § 2512(1)(b), is enforceable only by the government.[14]

21      ─────────────

22      [13] *See also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 160 (5th Cir. 2000); *Flowers v. Tandy Corp.*, 773 F.3d 585, 588–89 (4th Cir. 1985). The Sixth Circuit appears to agree with the other circuits on this point. *Luis v. Zang*, 833 F.3d 619, 636 (6th Cir. 2016). But it has also stated that how active a defendant is in the wiretapping is relevant to the analysis. This "active role" inquiry, however, has no textual basis and elides the differences between the "use" statute and the "possession" statute. *See id.* at 646 (Batchedler, J., dissenting) (Active engagement in wiretapping "has nothing to do with intentionally 'manufactur[ing], assembl[ing], possess[ing], or sell[ing] any' device, the activity prohibited by § 2512.").

26      [14] Defendants anticipate that Plaintiff will rely on *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), where the court declined to dismiss a § 635 claim because the plaintiff had "alleged injuries traceable to [the defendant's] possession **and use** of the device." *Id.* at *3

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1
2

## 2.   Plaintiff lacks Article III standing to assert a claim under either statute

3

4

5

6

7

8

9

10

11

12

13

14

On a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if the plaintiff does not satisfy Article III's standing requirements.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A plaintiff must have "suffered an injury in fact" to have standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  That is, she "must show that [s]he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'" from the alleged violation. *Id.* at 1548 (citation omitted).  A defendant's actions must have "affect[ed] the plaintiff in a personal and individual way."  *Id.* (citation omitted).  And a plaintiff that demonstrates standing for a violation of one section of a statute does not meet automatically the standing requirement for a violation of another section of that same statute.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008).

15

16

17

18

19

20

21

22

23

Here, as noted, Plaintiff does not allege injury from the alleged § 2512(1)(b) or § 635 violations.  Claiming only that Defendants manufactured, sold, or possessed a "device" does not establish any harm to Plaintiff, so the requisite "injury in fact" required for standing under Article III is absent.  *See Spokeo*, 136 S. Ct. at 1547.  And any amendment would be futile, as "[p]ossession of a pirate access device alone, although a criminal offense, creates nothing more than conjectural or hypothetical harm to [a private plaintiff]."  *Treworgy*, 373 F.3d at 1127.

24

25

26

27

28

(emphasis added).  The problem with this language is immediately apparent:  § 635 has nothing to do with the ***use*** of a device.  It criminalizes only manufacturing, possession, sale, or transporting.  Nor, again, could or does Plaintiff allege that someone's ***possession*** of a device harmed her.  The only thing that Plaintiff claims harmed her is Lululemon's alleged "use" of Quantum's platform.  (FAC ¶¶ 45-62.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.     Even if Plaintiff could enforce either statute, Quantum's platform is not a device primarily or exclusively designed for eavesdropping

18 U.S.C. § 2512(b) applies to "device[s]" whose "design . . . render[ them] primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications."  Likewise, CIPA § 635 applies only to "device[s]" that are "primarily or exclusively" designed for eavesdropping.  Plaintiff asserts that Quantum's "code" is a "device" for which the statutes impose criminal liability.  (*See* FAC ¶¶ 89, 105.)  Plaintiff's conclusory assertion is insufficient.  If the "code" is truly a "device" as Plaintiff contends, "Plaintiff[] must include facts in [her] pleading to show why it is so."  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*").  Indeed, given that these are criminal statutes, any ambiguity in the meaning of the word "device" should be interpreted narrowly under the rule of lenity.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009).

Nor do Plaintiff's allegations allow for the plausible inference that Quantum's "code" is "primarily or exclusively" used for eavesdropping.  First, Quantum's platform's primary purpose is to provide marketing analytics to "help businesses improve their website design and customer experience."  (FAC ¶ 17.)  This type of data collection is "part of [the] routine internet functionality" that makes digital commerce possible.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities."); *cf. In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (examining defendant's collection and disclosure of users' data); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025

(N.D. Cal. 2012) (defendant did not violate users' rights by disclosing users' browsing histories to third parties).  Moreover, as explained above, Quantum's "code" is not used *at all* for eavesdropping.

### 4.   Even if Quantum's platform were a "device," Lululemon's conduct does not violate either statute

Even if Quantum's platform could be considered a device under Wiretap Act § 2512(1)(b) or CIPA § 635, Lululemon did not engage in any of the actions prohibited by the statutes.  18 U.S.C. § 2512(1)(b) targets anyone who "manufactures, assembles, possesses, or sells any electronic, mechanical, or other device" intended for wiretapping/eavesdropping.  Similarly, § 635 imposes criminal liability on anyone who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" a device "primarily or exclusively designed or intended for eavesdropping."  Cal. Penal Code § 635.  The only term in these lists that could plausibly apply to Lululemon is "possesses."

But the general term "possesses" should be read in context of the more specific terms around it to be limited to the actual manufacturing chain and distribution and sales channels.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (when a "more general term follows more specific terms in a list, the general term is usually understood 'to embrace only objects similar in nature to those objects enumerated by the preceding specific words'" (citation omitted)).  If Congress or the California Legislature intended to extend liability to the end user of such a "device," they could have easily included more definitive terms like "purchases" or "uses."  They did not.  Thus, "possesses" should be read to include only those entities or individuals involved in the manufacture, distribution, or sale of a prohibited device, which does not include Lululemon.

///

**C.      Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution**

Plaintiff cannot meet the "high bar" courts have consistently required to state a claim for invasion of privacy under the California Constitution. *See Low*, 900 F. Supp. 2d at 1025 (noting that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim" (citation omitted)). To state a claim, Plaintiff must allege (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion "'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *Facebook III*, 956 F.3d at 601 (citation omitted). Plaintiff fails plausibly to allege any of these required elements.

### 1.      There is no legally protected privacy interest here

"Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion or interference ('autonomy privacy')." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994). Plaintiff fails to allege any facts establishing a legally protected privacy interest in either "informational" or "autonomy" privacy. Instead, Plaintiff merely regurgitates the standard outlined in *Hill*. (FAC ¶ 95.)

**Information privacy.** In the context of informational privacy, "the California Constitution protects only the 'dissemination or misuse of *sensitive* and *confidential* information.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (citation omitted). Here, Plaintiff does not allege that Defendants *disseminated or misused* any of her information, sensitive and confidential or otherwise. Rather, she alleges only that certain information was "recorded" or

"intercepted" by Quantum's platform, at Lululemon's behest, and "suppl[ied]" to Lululemon in order to "improve website design and customer experience."  (FAC ¶¶ 2, 4, 17, 40-41, 80.)  All of this information was captured solely for Lululemon's business purposes and was not disseminated to any third party.  This alone is cause for dismissal.  *See In re: Zoom Video Commcn's Inc. Privacy Litig.*, No. 20-CV-02155-LHK, 2021 WL 930623, at *15 (N.D. Cal. Mar. 11, 2021) (dismissing plaintiffs' invasion of privacy claims where plaintiffs "fail[ed] to allege that Zoom actually shared their personal data with third parties").

Nor does the information that Plaintiff alleges Quantum's platform captured during her visit to Lululemon's website, such as her mouse clicks, keystrokes, or scrolls; her shipping and billing address; the date and time of her visit; her location at the time of the visit; and her IP address, browser type, and operating system, qualify as *sensitive and confidential*.  *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (finding general allegations of collecting geolocation data insufficient to establish a privacy interest); *Cabral v. Supple, LLC*, No. EDVC 12-85-MWF (OPx), 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3 2012) ("The disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy."); *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2008) ("A person's general location is not the type of core value, informational privacy explicated in *Hill*.").

Even if this information were considered sensitive and confidential, Quantum's platform de-identifies, pseudonymizes, and/or encrypts much of this data at the time of capture.  (RJN Ex. B at 35, 38-39.)  For example, email addresses and billing and shipping addresses are not only de-identified, but also encrypted at the time of capture on the user's browser before transmission from the user's device.  (*Id.*)  Accordingly, Plaintiff has no legally protected privacy interest in this information.  *See London v. New Albertson's Inc.*, No. 08-CV-1173

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
sf-4445522

H(CAB), 2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (no legally protected privacy interest in de-identified information).  Additionally, courts have rejected claims based on informational privacy where, as here, "the . . . Defendant[s] only tracked and collected data during use of [Defendants'] services."  *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198.

**Autonomy privacy.**  "While the California Constitution protects autonomy, it does not 'create an unbridled right of personal freedom of action that may be vindicated in lawsuits.'"  *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198.  Accordingly, courts generally discuss autonomy privacy only in the context of *bodily* autonomy and have not extended autonomy privacy to include data autonomy.  *Id.*; *see also In re Yahoo Mail*, 7 F. Supp. 3d at 1039 ("[T]he Court construes [p]laintiffs' claim as asserting only an information privacy interest, as California courts have discussed autonomy privacy in the context of cases alleging *bodily* autonomy").  Plaintiff alleges no infringement of her bodily autonomy.

Accordingly, Plaintiff fails to plausibly to allege a legally protected privacy interest.

## 2.   Plaintiff does not demonstrate a reasonable expectation of privacy

To determine whether there is a "reasonable expectation of privacy," courts "must take into account any accepted community norms," including the "customs, practices, and physical settings surrounding particular activities" as well as "advance notice to Plaintiff," "what a user would reasonably expect in light of [this notice,]" and "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests."  *Heeger v. Facebook, Inc.*, No. 19-cv-06399-JD, 2020 WL 7664459, at *7 (N.D. Cal. Dec. 24, 2020); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037-38; *Hill*, 7 Cal. 4th at 36-37 (1994).  "The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner

1  consistent with an actual expectation of privacy, *i.e.*, he or she must not have

2  manifested by his or her conduct a voluntary consent to the invasive actions of

3  defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037-38.

4      Here, Plaintiff *voluntarily* provided the information in question while on

5  notice of its collection, and, as such, manifested her consent to the collection of

6  this information.  *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D.

7  Cal. 2016) ("[I]f voluntary consent is present, a defendant's conduct will rarely be

8  deemed highly offensive to a reasonable person" (internal quotation marks and

9  citation omitted).).  As discussed further below, Plaintiff has not alleged a

10  reasonable expectation of privacy in any of the information she claims Defendants

11  collected for this reason and several more.

12      ***First***, Plaintiff was on notice that the information at issue may be collected

13  when she engaged in the purported communication with Lululemon's website.[15]

14  Lululemon explicitly discloses in its Privacy Policy that Lululemon allows "others

15  to provide analytics services" on its behalf, like Quantum, and that these entities

16  may use "tracking technologies which collect information about your use of the

17  Services and other websites and applications."  (*See*, *supra*, Section V.A.4; *see*

18  *also* RJN Ex. D at 70.)  The Privacy Policy discloses that the following types of

19  information may be "automatically" collected when users "access and use"

20  Lululemon's services:

21      • Networking and device information, such as browser type, IP address,
         operating system version;
22
23      • Information about a user's activity such as access times, pages viewed

24  ───────────────
       [15] Plaintiff alleges that Lululemon's Privacy Policy discloses "that others have
25  the capacity to monitor certain information" and that this "is not the same as
       disclosing that others do in fact collect" the information at issue.  (FAC ¶ 59.)  But
26  as noted above, the Privacy Policy actually says "[w]e may allow others to provide
       analytics services . . . on our behalf across the web . . . .  These entities may use
27  cookies, web beacons, device identifiers, and other tracking technologies."  (*See*,
       *supra*, Section V.A.4; *see also* RJN Ex. D, at 70.)  And courts have held that the
28  use of the word "may" is sufficient to put users on notice.

and the routes by which the user accessed Lululemon's services;

- Transaction history; and
- Location information.

(RJN Ex. D at 68.)  Lululemon also explicitly discloses that it collects personal data users provide directly when purchasing products and shares various categories of personal data with data analytics providers.[16]  (*Id.* at 67-71.)

**Second,** there is no reasonable expectation of privacy in information *voluntarily* shared, where, as here, the information was collected only for Lululemon's use and was used for only the purposes Lululemon disclosed.  *See Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (even voluntarily supplying information that is then used for purposes *beyond* what was expected when the information was supplied "does not rise to the level of being 'highly offensive to a reasonable person'" (citation omitted)); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198-99 (dismissing invasion of privacy claims because Google's "profile" of a user was "only as specific as their" voluntary "use of Google services"); *Opperman*, 205 F. Supp. 3d at 1072 ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion" (citing *Hill*, 7 Cal. 4th at 26).).  Here, Plaintiff *voluntarily* interacted with and provided information to Lululemon and Quantum (as Lululemon's service provider) by visiting Lululemon's website.

**Third,** it is common practice and "part of routine internet functionality" for websites to "embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries, and other utilities."  *See*

---

[16] Plaintiff alleges that Defendants create a "video recording" of users' "mouse clicks, keystrokes, and other communications" but, as explained throughout this motion and demonstrated by the very patents Plaintiff cites, this is categorically untrue.  (FAC ¶¶ 24, 59, 60; RJN Ex. C.)  Thus, Plaintiff's allegations about Lululemon's Privacy Policy failing to disclose that it creates "video recordings" of users' activities on the website are irrelevant.

*Facebook II*, 263 F. Supp. 3d at 846; *see also McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (noting that "courts have characterized the collection and disclosure of [personal information about the users of a technology] as routine commercial behavior").  That Plaintiff's counsel has brought at least two dozen nearly identical suits against other businesses arising out of their use of web analytics services like Quantum's further illustrates that this practice is an "accepted community norm," not an infringement on a reasonable expectation of privacy.[17]

**Fourth,** Plaintiff does not allege that Defendants tracked or collected any information after she left Lululemon's website.  Plaintiff only alleges that Defendants collected the information at issue while Plaintiff was using Lululemon's website.  (FAC ¶¶ 1, 2, 4, 46, 48); *see Heeger*, 2020 WL 7664459, at *7 (no reasonable expectation of privacy in the location data collected by Facebook where Facebook was "said to have collected it only while plaintiffs were using the app").

Accordingly, Plaintiff fails plausibly to allege any reasonable expectation of privacy.

### 3. The alleged conduct does not amount to an egregious or offensive breach of privacy

Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Hill*, 7 Cal. 4th at 37.  The type of conduct that is considered serious enough to rise to the level of an egregious or offensive breach of privacy generally involves the public disclosure or improper use of highly personal medical information.  *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.

---

[17] In addition, other plaintiffs' attorneys have filed more than two dozen copycat suits under Florida's analogous wiretapping statute.

App. 4th 986, 991-92 (2011) (providing as examples "[CHP] officers' Internet dissemination of photographs of the decapitated corpse of an accident victim[,]" the "gratuitous disclosure of a patient's HIV status," or the "improper use of confidential mental health records").

Plaintiff alleges, at most, that Defendants *captured*—not disseminated or disclosed—her mouse clicks, keystrokes, scrolls, mouse movements, shipping and billing address, IP address, the date, time, and duration of her visit to Lululemon's website, her location at the time of the visit, her browser type, the operating system on her device, and "information about the web pages viewed on the website." (FAC ¶¶ 2, 4, 46.) The capture alone of any of this information does not constitute an "egregious breach of the social norms," especially considering that much of this information is de-identified, pseudonymized, and/or encrypted at the time of capture. (RJN Ex. B at 35, 38-39.) Even the capture *and disclosure* of non-encrypted highly personal information, such as social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claim. *Low*, 900 F. Supp. 2d at 1025; *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

As for the type of information Quantum's platform allegedly captured from Plaintiff, courts in this circuit have consistently held that the *collection and disclosure* (and, again, Plaintiff does not allege any disclosure here) of such information does not constitute an egregious breach of the social norms to establish an invasion of privacy claim:

- Invasion of privacy claims dismissed because "[t]he data alleged to have been collected without [p]laintiff's consent, the frequency and duration of use of certain apps, does not rise to the requisite level of an egregious breach of social norms or intrusion in a manner highly offensive to a reasonable person[.]" *McCoy*, 2021 WL 405816, at *7;

- Intrusion upon seclusion claim dismissed because disclosure of online browsing habits and search queries to third parties did not meet "high bar for the requisite intrusion that is highly offensive to a reasonable

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

sf-4445522

person[.]" *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 985 (internal quotation marks and citation omitted);

- Found disclosure of digital identification information such as users' browsing histories "does not meet the standard set by California courts" to establish a claim for invasion of privacy. *Low*, 900 F. Supp. 2d at 1025;

- Concluded disclosure to third parties of unique device identifier numbers, personal data, and geolocation information from plaintiffs' devices without plaintiffs' knowledge or consent does not constitute an egregious breach of social norms. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012);

- Found defendant's collection of plaintiff's address without his knowledge or permission, and use of it to mail him coupons and other advertisements, is not an egregious breach of social norms, but rather "routine commercial behavior[.]" *Folgelstrom*, 195 Cal. App. 4th at 992.

Accordingly, Defendants' alleged conduct does not amount to an egregious breach of the social norms as is required to establish an invasion of privacy claim.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiff's First Amended Class Action Complaint and dismiss the First Amended Complaint with prejudice.

Dated:  March 25, 2021          MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
_____
Purvi G. Patel
**Attorneys for Defendant**
**Quantum Metric, Inc.**

Dated:  March 25, 2021          DLA PIPER LLP (US)

By: */s/ David B. Farkas*
_____
David B. Farkas
**Attorneys for Defendant**
**Lululemon USA Inc.**

34

1

2

**ECF ATTESTATION**

3      I, Purvi G. Patel, am the ECF User whose ID and password are being used to

4   file the foregoing document.  In accordance with Local Rule 5-4.3.4, concurrence

5   in the filing of this document has been obtained from, David B. Farkas, counsel for

6   Defendant Lululemon USA, Inc., and I shall maintain records to support this

7   concurrence for subsequent production for the Court if so ordered or for inspection

8   upon request by a party.

9

10   Dated: March 25, 2021                    MORRISON & FOERSTER LLP

11

12                                            By:  */s/ Purvi G. Patel*

13                                                 Purvi G. Patel

14                                            ***Attorneys for Defendant***
                                              ***Quantum Metric, Inc.***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

sf-4445522