1   PURVI G. PATEL (CA SBN 270702)
    PPatel@mofo.com
2   MATTHEW E. LADEW (CA SBN 318215)
    MLadew@mofo.com
3   JOVANNA RENEE BUBAR (CA SBN 329277)
    JBubar@mofo.com
4   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
5   Los Angeles, California 90017-3543
    Telephone: 213.892.5200
6   Facsimile: 213.892.5454

7   Attorneys for Defendant
    QUANTUM METRIC, INC.
8
    ANGELA CHRISTINE AGRUSA (CA SBN 131337)
9   Angela.agrusa@us.dlapiper.com
    DAVID B. FARKAS (CA SBN 257137)
10  David.farkas@us.dlapiper.com
    DLA PIPER LLP (US)
11  2000 Avenue of the Stars Suite 400
    Los Angeles, CA 90067-4704
12  Tel. 310.595.3000
    Fax 310.595.3300
13
    Attorneys for Defendant
14  LULULEMON USA INC.

15                    UNITED STATES DISTRICT COURT

16                   CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18  MARY YOON, individually and on behalf of all others similarly situated, | Case No. 5:20-cv-02439-JWH-SHK |
| 19                     Plaintiff, | **DEFENDANTS LULULEMON USA INC. AND QUANTUM METRIC, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 20         v. | |
| 21  LULULEMON USA INC. and QUANTUM METRIC, INC., | |
| 22                     Defendants. | Date:      May 28, 2021 |
| 23 | Time:      9:00 a.m. |
| 24 | Judge:     Hon. John W. Holcomb |
| | Ctrm:      2 |
| 25 | Complaint filed:  Nov. 19, 2020 |
| 26 | FAC filed:        Feb. 25, 2021 |

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   ARGUMENT ............................................................................. 1

   A.   There Is No Question of Fact Precluding Dismissal ........................... 1

   B.   Plaintiff Cannot State a Claim Under CIPA § 631 ............................ 3

      1.   There is no "third party" eavesdropper ...................................... 3

      2.   Quantum's platform did not access the "contents" of Plaintiff's purported communication........................................... 6

      3.   Quantum's platform does not capture "contents" at all, much less "in transit".................................................................. 9

      4.   Lululemon expressly disclosed the alleged conduct in its Privacy Policy....................................................................... 10

   C.   Plaintiff's Federal Wiretap Act § 2512 and CIPA § 635 Claims Should Be Dismissed for Several Reasons ......................................... 12

      1.   Plaintiff cannot enforce Wiretap Act § 2512 or CIPA § 635 .......................................................................... 12

      2.   Plaintiff lacks standing to sue under either statute .................. 13

      3.   Quantum's platform is not a "device primarily or exclusively" designed for "eavesdropping" ............................. 14

      4.   Even if Quantum's platform were a "device," Lululemon's conduct does not violate either statute ............... 15

   D.   Plaintiff Fails to State a Constitutional Claim for Invasion of Privacy........................................................................................ 15

      1.   Plaintiff has not alleged a legally protected privacy interest................................................................................. 16

      2.   Plaintiff does not plead a reasonable expectation of privacy ................................................................................. 17

      3.   The alleged conduct does not amount to an egregious or offensive breach of privacy ..................................................... 19

III.  CONCLUSION ........................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
  46 F. Supp. 3d 999 (C.D. Cal. 2014) .................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................2, 14, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................2

*Black v. Bank of America*,
  30 Cal. App. 4th 1 (1994) ................................................................................4

*Cothron v. White Castle System, Inc.*,
  467 F. Supp. 3d 604 (N.D. Ill. 2020) ..............................................................11

*Graham v. Noom, Inc.*,
  No. 20-cv-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021)..........*passim*

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) (*Facebook I*) ....................................6, 14

*In re Facebook Inc. Int'l Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) (*Facebook III*)...............................................*passim*

*In re Google Assistant Privacy Litigation*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .........................................................16, 17

*In re Google Privacy Policy Litigation*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014)................................................................18

*In re Pharmatrak*,
  329 F.3d 9 (1st Cir. 2003).................................................................................8

*In re Vizio, Inc. Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...........................................................19

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

sf-4479801

*Javier v. Assurance IQ, LLC*,
    No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9,
    2021) ...........................................................................................................11, 12

*Johnson v. Blue Nile, Inc.*,
    No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)...................4

*Johnson v. U.S. Off. of Pers. Mgmt.*,
    783 F.3d 655 (7th Cir. 2015) ...........................................................................13

*Kauders v. Uber Techs., Inc.*,
    No. SUCV20162180D, 2019 WL 510568 (Mass. Super. Ct. Jan. 3,
    2019) ................................................................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..............................................................................2

*Lopez v. Apple*,
    No. 19-cv-04577-JSW, 2021 WL 823122 (N.D. Cal. Feb. 10,
    2021) ..................................................................................................................5

*Low v. LinkedIn*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012)............................................................18

*Lozano v. Doe 1*,
    No. 5:20-cv-00684-SVW (SK), 2020 WL 6276988 (C.D. Cal. Aug.
    6, 2020) ............................................................................................................16

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ......................................................10, 12, 14, 15

*Maghen v. Quicken Loans, Inc.*,
    No. CV 14-03840 DMG, 2014 WL 12586447 (C.D. Cal. Oct. 28,
    2014) ................................................................................................................15

*Mastronardo v. Mastronardo*,
    No. 377 EDA 2017, 2018 WL 495246 (Pa. Super. Ct. Jan. 22,
    2018) ................................................................................................................11

*Matera v. Google Inc.*,
    No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23,
    2016) ..................................................................................................................6

iii

*Minotty v. Baudo*,
  42 So. 3d 824, 830 (Fla. Dist. Ct. App. 2010) ..................................................... 7

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................................... 10, 11

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) (*Opperman I*) ........................................ 19

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (*Opperman II*) ............................................................. 19

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ......................................................................... 20

*People v. Windham*,
  145 Cal. App. 4th 881 (2006) .......................................................................... 6

*Powell v. Union Pacific R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ........................................................... 4, 10

*Rainsey v. Facebook, Inc.*,
  311 F. Supp. 3d 1101 (N.D. Cal. 2018) ............................................................. 6

*Revitch v. New Moosejaw, LLC*,
  No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23,
  2019) ....................................................................................... 5, 7, 14, 19

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ................................................................................... 6

*S.D. v. Hytto Ltd.*,
  No. 18-cv-00688-JSW, 2019 WL 8333519 (N.D. Cal. May 15,
  2019) ...................................................................................................... 8, 9

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) ......................................................................... 16

*Smith v. LoanMe Inc.*,
  11 Cal. 5th 183 (2021) ................................................................................... 5

*Svenson v. Google*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) ............................................................. 8, 9

iv

*U.S. v. Eady,*
  648 F. App'x 188 (3d Cir. 2016) ................................................................. 6

*U.S. v. Forrester,*
  512 F.3d 500 (9th Cir. 2008) .................................................................... 8

*United States v. Arreguin,*
  453 F. App'x 678 (9th Cir. 2011) ............................................................. 11

*United States v. Johnson,*
  875 F.3d 1265 (9th Cir. 2017) ................................................................. 11

*United States v. Koyomejian,*
  970 F.2d 536 (9th Cir. 1992) .................................................................... 7

*United States v. Larios,*
  593 F.3d 82 (1st Cir. 2010) ...................................................................... 7

*Vashisht-Rota v. Ottawa Univ.,*
  No. 20-CV-959 TWR (KSC), 2020 WL 6544708 (S.D. Cal. Nov.
  6, 2020) .................................................................................................. 17

*Warden v. Kahn,*
  99 Cal. App. 3d 805 (1979) ................................................................... 3, 5

*Yale v. Clicktale, Inc.,*
  No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15,
  2021) ....................................................................................................... 4

*Yates v. United States,*
  574 U.S. 528 (2015) ................................................................................ 15

**Statutes & Other Authorities**

Wiretap Act § 2512 ................................................................... 12, 13, 14

Cal. Penal Code § 631 ......................................................................*passim*

Cal. Penal Code § 637.2(a) ...................................................................... 13

sf-4479801

## I.    INTRODUCTION

Plaintiff's opposition is based on the faulty premise that "if she pled it, it must be true."  There are limits, however, to what the Court is required to accept as true in adjudicating a motion to dismiss.  The Court need not, and must not, accept as true allegations that are not well-pled or allegations that are contradicted by facts that are incorporated by reference or are judicially noticeable.  When viewed properly, it is clear that Plaintiff cannot allege facts sufficient to maintain her "wiretapping" claims against either Lululemon or Quantum Metric.

There can be no wiretap here, where Lululemon used software provided by Quantum to understand and improve users' experience on its retail website.  A judge in the Northern District of California agrees, and has granted motions to dismiss in three substantively identical cases, all filed by Plaintiff's counsel.  In well-reasoned orders, the court recognized that the "session replay" provider in those cases is an extension of the website operator, and simply provides a tool for the operator to analyze data for its own business purposes.  As a result, the court concluded, the session replay provider cannot be a third-party eavesdropper.  None of Plaintiff's arguments require this Court to reach a different outcome.  Her lawsuit should be dismissed with prejudice, as amendment would be futile.

## II.    ARGUMENT

### A.    There Is No Question of Fact Precluding Dismissal

Each time Plaintiff is faced with a dispositive fact the Court can judicially notice or consider through the incorporation by reference doctrine, Plaintiff claims that Defendants are creating "factual issues."  It is important to remember, however, that in her original Complaint, Plaintiff quoted heavily from Quantum's website to describe Quantum's technology.  (*E.g.*, ECF No. 1 (Compl.) ¶¶ 16-21.)  She omitted from that description, however, crucial (and inconvenient) information from the website—including, for example, that Quantum's platform encrypts any

1

1    personal information captured and that Quantum is unable to decrypt that

2    information.  (ECF No. 19 at 2-3.)  As is permitted, Defendants provided the

3    omitted context in support of their initial motion to dismiss.  Plaintiff amended,

4    and now pleads as "facts" conclusory and/or unsupported allegations designed to

5    create a dispute.  She claims, for example, that Quantum's public-facing statements

6    regarding encryption are "dubious," and supports this "fact" with information that

7    has nothing to do with Quantum.  (ECF No. 20 (FAC) ¶ 50 (citing 2017 "study"

8    that did not examine Quantum's platform).)  She also quotes from the exhibits to

9    Defendants' original request for judicial notice no fewer than 14 times.  (FAC

10   ¶¶ 20, 22-24, 26, 30-33, 56, 79.)  After cherry-picking from those exhibits, Plaintiff

11   says any disagreement with her characterizations is a "fact issue" inappropriate for

12   the Court to resolve.

13        The law does not countenance such gamesmanship.  The Court must not

14   assume the truth of legal conclusions merely because they are pleaded as factual

15   allegations, nor should it accept as true allegations contradicted by judicially

16   noticeable facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v.*

17   *Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff may not select "portions of

18   documents that support [her] claims, while omitting portions of those very

19   documents that weaken—or doom—[her] claims."  *Khoja v. Orexigen*

20   *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Plaintiff's argument

21   renders meaningless the incorporation-by-reference doctrine, which "[p]revent[s]

22   plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting

23   references to documents upon which their claims are based."  *Id.*

24        Plaintiff accordingly cannot seriously dispute that the Court can consider

25   Exhibits A-F.  (ECF No. 24.)  Defendants have asked the Court to take judicial

26   notice of the following: (1) two patents (Exs. A and C), which Plaintiff has

27   incorporated by reference in her FAC and which are otherwise judicially notice as

28

public records; and (2) information from Quantum's and Lululemon's websites (Exs. B, D, and E), which Plaintiff has incorporated by reference, sometimes by quoting them without attribution (*see, e.g.*, FAC ¶ 21).  As for the last item, Exhibit F, it is far from the "random internet blog" that Plaintiff says it is.  (ECF No. 25 (Opp.) at 35.)  It, too, appears on Quantum's website.  Plaintiff included the precise quote on which Defendants now rely in her original Complaint, but omitted it from her FAC (ECF No. 23 (Mot.) at 4 n.4), and she continues to quote without attribution a different portion of this supposedly "random" blog in her FAC, incorporating it by reference.  (FAC ¶ 18.)  It would be improper under these circumstances for the Court to accept Plaintiff's allegations as true, when they are contradicted by the very sources on which she relies.  As such, the Court should judicially notice and consider Exhibits A through F.

## B.   Plaintiff Cannot State a Claim Under CIPA § 631

### 1.   There is no "third party" eavesdropper

Plaintiff agrees that § 631 applies only to "eavesdropping by a third party and not to recording by a participant to a conversation."  *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (citations omitted); (Opp. at 2-3).  Plaintiff also agrees that Lululemon was a party to the "communication" at issue, *i.e.*, Plaintiff's visit to Lululemon's website.  (Opp. at 3.)  She further agrees, because she alleged it, that Lululemon voluntarily embedded Quantum's code on its website, and paid Quantum to use its platform to get information about users' experience on its website.  (FAC ¶¶ 41, 43.)  Despite that, she contends that Quantum is a third-party eavesdropper because she intended to communicate only with Lululemon.  (Opp. at 3.)  She ignores, however, that Quantum acted only on Lululemon's behalf, as Lululemon's hired service provider.  Quantum did not capture any information from Plaintiff for any reason other than to provide it to Lululemon.

Last month, examining materially identical facts, a judge in the Northern

sf-4479801

District of California dismissed three "session replay" wiretapping cases brought by Plaintiff's counsel.[1]  In *Graham*, for example, the court found dispositive that—like Quantum—the session replay service provider (FullStory) was a party to the communication as an "extension" of the website operator (Noom).  *Graham*, 2021 WL 1312765, at *5.  The court relied on the fact that FullStory acted solely on Noom's behalf.  *Id*. at *4-6.[2]  The court reasoned that FullStory "provides a tool—like the tape recorder in *Rogers*—that allows Noom to record and analyze its own data in aid of Noom's business."  *Id.*  The same is true here, requiring dismissal of Plaintiff's CIPA claim.  Quantum is "not a third-party eavesdropper" and nothing "equivalent [to] a wiretap" has occurred.  *Id.* at *5-6.

Because there was no third party eavesdropping, Lululemon cannot be liable for aiding and abetting Quantum under § 631.  Even if there were such wrongful conduct here, Lululemon could not be liable for aiding and abetting because (1) Plaintiff concedes Lululemon was a party to the communication and (2) Quantum was acting as Lululemon's service provider.  *See Black v. Bank of America*, 30 Cal. App. 4th 1, 6 (1994) (a subordinate employee of a corporation cannot be liable for conspiring with the corporate principal because a corporation cannot conspire with itself); *Powell v. Union Pacific R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (rejecting argument that a party to the communication could be liable for aiding and abetting under § 631).

Nothing Plaintiff says about *Graham* changes the fact that it is the same case

---

[1] *See Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021); *Graham v. Noom, Inc.*, No. 20-cv-06903-LB, 2021 WL 1312765, at *10 (N.D. Cal. Apr. 8, 2021); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021).

[2] Plaintiff argues that *Graham* erred because § 631 provides for liability even when data is not "sold or used." (Opp. at 6.)  Plaintiff misconstrues *Graham*.  The court dismissed the case because FullStory was a party to the communication as an extension of Noom.  That FullStory did not use or sell the captured data is just one of the factors the court relied on in reaching this conclusion.

4

as hers.  What was missing in *Graham*, and is missing here, is any allegation that the session replay provider was ***not*** acting solely as an extension of the website operator (*e.g.*, that the session replay provider "used the data").  *Graham*, 2021 WL 1312765, at *5.  Like in *Graham*, Quantum was hired by Lululemon solely to assist Lululemon in tracking certain user interactions with Lululemon's website.[3]

*Graham* also demonstrates Plaintiff's error in relying on *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).  (Opp. at 2.)  As *Graham* concluded, *Moosejaw* is inapposite.  In *Moosejaw*, the purported third party eavesdropper was a "marketing company" that "mined information from other websites," "create[d] marketing databases of consumer information," and sold that information.  *Graham*, 2021 WL 1312765, at *5.  The marketing company in *Moosejaw* is thus unlike session replay providers like Quantum because it was acting on its own behalf in accessing, using, and selling the information it collected.  In contrast, Quantum's platform exists solely to provide the collected information (1) to a website owner, (2) about that owner's website, (3) for the owner's sole use.

Plaintiff's other arguments fare no better.  Plaintiff points out that California is a two-party consent state (Opp. at 3), but, as Plaintiff acknowledges, § 631 does not apply to "recording" (with or without consent) by a participant to the communication.  *Warden*, 99 Cal. App. 3d at 811.  Here, just like in *Graham*, Quantum was a party to the communication as an extension of Lululemon.  None of Plaintiff's cited cases involve such a situation.[4]  Moreover, as discussed below,

---

[3] Plaintiff also says Quantum cannot argue that it was a party to communications that it did not receive.  Quantum's argument as to contents, not receipt, as any information Quantum possesses is de-identified and/or encrypted.  By analogy, you can still be a party to a communication even if you do not speak the language being spoken.

[4] The cases Plaintiff cites either involve a different section of CIPA, *see Smith v. LoanMe Inc.*, 11 Cal. 5th 183 (2021) (§ 632.7), or involve recording by a *non-party* or *third party*, *see Lopez v. Apple*, No. 19-cv-04577-JSW, 2021 WL 823122,

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

sf-4479801

Plaintiff was on notice of and consented to Lululemon's use of Quantum's platform when she placed an order on Lululemon's website.  (Section II.B.4.)  For these same reasons, Plaintiff's argument that she only intended to communicate with Lululemon is irrelevant and unavailing.

### 2. Quantum's platform did not access the "contents" of Plaintiff's purported communication

It bears repeating that there is ***no way*** for Quantum to personally identify a particular visitor to Lululemon's website by reviewing any of the allegedly collected data.[5]  (Mot. at 4-5, 12, 14.)  Plaintiff therefore cannot plausibly plead (or prove) that Quantum accessed the "contents" of ***her*** purported communications with Lululemon.  Equally important, Plaintiff concedes that much of the information she alleges Quantum's platform collected (the date and time of her visit, her IP address, location, browser type, and operating system) is not actionable.  (Opp. at 9 & n.1.)  She limits her claim to two categories of purportedly "actionable content" (1) the web pages she viewed while on Lululemon's website and (2) keystrokes, mouse clicks, and "other information [she] provided while on the website."  (*Id.*)  As discussed below, even so limited, she fails to counter Defendants' arguments.

***Web pages viewed.***  For her contention that the web pages she viewed on Lululemon's website are "actionable content," Plaintiff relies on *In re Facebook Inc. Int'l Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (*Facebook III*), arguing that the collection of ***internet*** search history, search terms, and URL addresses violates

---

at *1-2 (N.D. Cal. Feb. 10, 2021); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016); *People v. Windham,* 145 Cal. App. 4th 881, 884-85 (2006); *Ribas v. Clark,* 38 Cal. 3d 355, 358-62 (1985); *U.S. v. Eady*, 648 F. App'x 188, 190 (3d Cir. 2016).

[5] This fact distinguishes this case from *Rainsey v. Facebook, Inc.*, which Plaintiff cites.  (Opp. at 10.)  In *Rainsey,* the court found that the ***identities*** of people who "liked" a certain Facebook page constituted the "contents of a communication."  311 F. Supp. 3d 1101, 1115 (N.D. Cal. 2018).

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

sf-4479801

CIPA.  (*Id*.)  But Plaintiff does not claim that Quantum's platform captured this information or that it is actionable content.  As such, the Court can ignore Plaintiff's claims with respect to (1) web pages viewed (which are not supported by any argument or authority) and (2) internet search history, search terms, and URL addresses (which are not supported by any allegation).  In any event, *Facebook III* does not support Plaintiff as that case does not address the "content" element of a CIPA (or Wiretap Act) claim.  All of Plaintiff's cites from *Facebook III* in support of her "contents" argument are from the court's discussion of the plaintiffs' invasion of privacy claim.  *Facebook III*, 956 F.3d at 602-08.

   ***Keystrokes and mouse clicks.***  Plaintiff once again relies on *Moosejaw*, this time to support her argument that her keystrokes and mouse clicks constitute "actionable 'content.'"  (Opp. at 10.)  *Moosejaw*, though, did not address the "contents" issue; the court only addressed whether keystrokes and mouse clicks could be a communication at all.  Whether this information is "actionable content" was not at issue and therefore the outcome in that case is far from instructive.

   More instructive are cases like *Minotty v. Baudo*, which held that the Florida equivalent to the federal Wiretap Act (and CIPA) does not apply to silent video images because "physical conduct recorded on silent videotapes does not convey the substance of a particular communication."  42 So. 3d 824, 830 (Fla. Dist. Ct. App. 2010); *see also United States v. Koyomejian*, 970 F.2d 536, 541 (9th Cir. 1992) (Wiretap Act does not prohibit use of silent surveillance in criminal investigations); *United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010) ("Every circuit court to address the issue has concluded that [the Wiretap Act] does not regulate silent video surveillance.").  The purported "recordings" (really reconstructions)[6] of Plaintiff's keystrokes and mouse clicks—which Plaintiff

---

[6] Session replay does not record the website user or create a video; rather it uses collected data to reconstruct the user's interactions with a website.  (Mot. at 4.)

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

alleges "relay action" (see FAC ¶ 22)—are the computerized equivalent to silent video images of physical conduct.  Like the physical movements recorded in a silent video, keystrokes and mouse clicks do not convey the substance of any purported communication.

*"Other information" provided.*  Plaintiff does not specify what "other information" she provided while on Lululemon's website.  (*See* Opp. at 9.)  To the extent she means billing and shipping addresses (FAC ¶¶ 2, 49), that information is encrypted and only Lululemon can decrypt it.  (Mot. at 4-5.)  Only Lululemon—not Quantum—can access that information.  As such, whatever information Plaintiff provided was accessed only by the very Defendant to whom Plaintiff intended to provide it.

Moreover, billing and shipping addresses are exactly the type of information *Svenson v. Google*, 65 F. Supp. 3d 717 (N.D. Cal. 2014), found is non-actionable "record" information.  (*See* Mot. at 11-12.)  Plaintiff argues that ***any*** information provided to a website constitutes the "content" of a communication, citing *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) (specifically its discussion of *In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003)) in support.  (Opp. at 9-10.)  This argument was rejected in *Svenson*, where the court distinguished the information at issue in *Pharmatrak*, which involved user input of personal medical information. *Svenson*, 65 F. Supp. 3d at 729 (finding that *Zynga's* discussion of *Pharmatrak* "does not mandate a conclusion that all information input by means of a form interface constitutes contents of a communication").[7]  This information, the

---

[7] Plaintiff relies on *S.D. v. Hytto Ltd.*, No. 18-cv-00688-JSW, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019) for the proposition that record information is "typically" automatically generated.  (Opp. at 11.)  Plaintiff then argues that an email address could be ***either*** content ***or*** record information depending on how it is provided.  Courts, however, have found email addresses are record information regardless of how they are provided.  *See Svenson*, 65 F. Supp. 3d at 729; *U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("e-mail to/from

*Svenson* court reasoned, could not constitute "mere record information" given its highly personal nature.  *Id*.  Any information Plaintiff inputted into Lululemon's website in contrast would be much more analogous to the information the *Svenson* plaintiff provided (*e.g.*, name, home city and state, and ZIP code).  Under *Svenson* such information is properly treated as non-actionable record information.

### 3. Quantum's platform does not capture "contents" at all, much less "in transit"

Plaintiff accurately states Defendants' argument:  "Quantum's platform could not have 'read or attempted to read or to learn the contents or meaning' of any communication 'in transit' because the 'communication' is accessed while on the user's device and is pseudonymized and encrypted before being transmitted from the user's device (or captured in de-identified form)."  (Opp. at 11-12 (quoting Mot. at 15).)  Plaintiff then ignores almost all of what she quotes.  She offers no response to the fact that all "communications" are pseudonymized and encrypted before being transmitted.  So even if Plaintiff were correct (and she is not) that communications are intercepted "in transit," those "communications" have already been made unusable to Quantum.[8]

Plaintiff also contends the statute does not mean what it says.  She asserts that § 631 independently applies when a communication is "being sent from, or

---

addresses . . . constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers").

*Hytto*, of course, did not involve any "record" information like the information potentially at issue here, or an entity collecting information at the direction of a party to the communication.  That case involved "interception of a transmission containing vibration intensity" sent from one individual to another (through an app) and then to a device (a vibrator).  2019 WL 8333519, at *6-7.  The court found this constituted the "content" of a communication.  *Id.*  The information Plaintiff alleges was collected here is far from the intentional intimate physical communication between individuals in *Hytto*.

[8] Plaintiff again tries to conflate the aggregation of data with the collection of that data.  (Opp. at 13 n.2.)  Aggregation is a separate process that occurs after collection and has nothing to do with this lawsuit.  (Mot. at 13.)

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

sf-4479801

received at any place within this state." Cal. Penal Code § 631(a).  This language merely shows the statute applies from the beginning to the end of a communication and that the statute applies to communications either sent or received in California. It does not erase the settled "in transit" requirement, on which all of Plaintiff's own cases focus.  For example, in *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), which examined software surreptitiously installed on a computer, the court specifically explained that the plaintiff had alleged the communications were acquired "'as [they were] being written and communicated between senders and recipients.'" *Id.* at 624, 630.  But unlike here, the software there "immediately and *instantaneously* rout[ed] the intercepted communications to [Defendant's] servers." *Id.* at 630-31 (emphasis in original).  That software has nothing to do with Quantum's platform, which *does* save information locally—pseudonymizing it—and *does not* "instantaneously" route communications.  (Mot. at 13-15.)

### 4.   Lululemon expressly disclosed the alleged conduct in its Privacy Policy

***Plaintiff was on notice of the conduct at issue.***  Plaintiff largely talks past Defendants' arguments by focusing on "consent" as opposed to "notice."  Section 631 requires that the alleged wiretapping be "surreptitious." *Powell*, 864 F. Supp. 2d at 955 (Section 631 was aimed at "the secret monitoring of conversations by third parties").  The case Plaintiff relies on, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), does not change the fact that there was no secret monitoring here.  *Nguyen* observed that courts have "refused to enforce browsewrap agreement[s]" where terms of use are "buried at the bottom of the page or tucked away . . . where users are unlikely to see it." *Id.* at 1177.  That is not the case here; Plaintiff cannot plausibly claim that the Privacy Policy was "buried" where she was unlikely to see it because the hyperlink to the Policy was presented to her *immediately underneath* the "Place Order" button.  (Mot. at 16.)

sf-4479801

Thus, even under *Nguyen*, Plaintiff had constructive notice of the Privacy Policy.

***Plaintiff's "retroactive consent" argument fails.*** Plaintiff's "retroactive" consent argument was rejected in *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021). (Mot. 19-20.)[9] Moreover, Plaintiff's argument makes no sense in the context of the internet. Under her theory, every single company offering its website through a third-party web host would need to provide a pop-up notice or some other obtrusive notification before a user could do anything on the site (and since data is transmitted the moment a user lands on a webpage for the webpage to even function, it's unclear whether a pop-up would satisfy Plaintiff).

Plaintiff's cases on this point are also distinguishable. *Cothron v. White Castle System, Inc.* involved the "Illinois Biometric Information Privacy Act" (which unlike the Wiretap Act, expressly requires consent) and did not reach the issue of retroactive consent. 467 F. Supp. 3d 604, 617 (N.D. Ill. 2020). *Kauders v. Uber Techs., Inc.*, applying Massachusetts law, held that Uber's terms were not "reasonably communicated" to the plaintiff—not because of retroactive consent— but because of inconsistencies in Uber's disclosures relating to consent to the terms. No. SUCV20162180D, 2019 WL 510568, at *5 (Mass. Super. Ct. Jan. 3, 2019). No similar facts are present here.[10]

---

[9] Plaintiff unsuccessfully attempts to distinguish the authorities relied on by the *Javier* court by focusing on nuances that had no bearing on the holdings in these cases. (Opp. at 17-18.) Plaintiff cannot evade the fact that those cases recognized that consent given after-the-fact can be effective.

[10] Plaintiff also cites to *United States v. Johnson*, 875 F.3d 1265, 1277 n.7 (9th Cir. 2017) and *United States v. Arreguin*, 453 F. App'x 678, 681 (9th Cir. 2011), both of which involved application of the exclusionary rule as to evidence obtained via a police search. They concluded that the searches were improper under the Fourth Amendment because consent obtained after-the-fact would be incompatible with the goal of deterring unconstitutional searches and seizures. No comparable policy is applicable here. *Mastronardo v. Mastronardo*, is also inapplicable because it involved a contractual consent clause and consent obtained over a year later. No. 377 EDA 2017, 2018 WL 495246, at *5 (Pa. Super. Ct. Jan. 22, 2018).

sf-4479801

***Plaintiff's reading of the Privacy Policy cannot save her claims***.  Faced with the fact that the Privacy Policy expressly notified her that Lululemon uses third-party tracking technologies to perform analytics services on its behalf, Plaintiff argues that the Policy's language is ambiguous and poses questions of fact the Court cannot resolve now.  Plaintiff nitpicks the details of the Privacy Policy to create ambiguity where there is none.  She argues that the Policy does not mention Quantum by name, does not adequately define "personal data," and that the use of the word "may" in the clause referring to the fact that Lululemon's third-party service providers "may use . . . tracking technologies which collect information about your use of the Services . . ." implies only the capacity to track, which is insufficient.  *Javier* rejected these "largely irrelevant" arguments, and this Court should as well.  2021 WL 940319, at *4 ("The policy clearly indicates that Assurance tracks activity on its website and may use third party vendors to do so.")

### C.   Plaintiff's Federal Wiretap Act § 2512 and CIPA § 635 Claims Should Be Dismissed for Several Reasons

#### 1.   Plaintiff cannot enforce Wiretap Act § 2512 or CIPA § 635

None of Plaintiff's arguments change the fact that there is no private right of action under either Wiretap Act § 2512 or CIPA § 635.

**Wiretap Act § 2512:**  Ignoring the circuit court decisions contrary to her position, Plaintiff relies exclusively on the Sixth Circuit's decision in *Luis* to justify her § 2512(1)(b) claim.  (Opp. at 23-24.)  The Sixth Circuit itself, however, described its holding as "narrow," carving out a private right of action where a defendant plays an "active role in the use of the relevant device."  *Luis*, 833 F.3d at 637.  Quantum took no such "active role" here where it merely acted as a service provider to Lululemon.  (*See* FAC ¶¶ 38-41, 43.)  Moreover, Plaintiff does not allege facts close to what the Sixth Circuit considered in *Luis*, where the software at issue scanned "*everything*" on a user's computer and allowed for snooping

whenever the user's computer was connected to the internet.  833 F.3d at 624 (emphasis in original).  In any event, the Court should not join the Sixth Circuit in reading the unwritten "active role" exception into § 2512.  The Wiretap Act already has a provision (§ 2511) for those playing an "active role" in wiretapping.  By "confus[ing ] alleged violations of § 2512 with violations of § 2511," the Sixth Circuit's "active role" test "distorts the statutory text and lacks any standard to guide future litigants."  *Id.* at 644-46 (Batchelder, J., dissenting).

**CIPA § 635:**  Plaintiff argues she has a right of action under CIPA § 635 because she is not required to have been injured.  (Opp. at 24.)  This argument ignores the plain language of CIPA's right-of-action provision:  "Any person who has been *injured* by a violation of this chapter may bring an action."  Cal. Penal Code § 637.2(a) (emphasis added); *see also Graham*, 2021 WL 1312765, at *7.  Plaintiff does not and cannot allege she was injured by the manufacture, possession, or sale of a wiretapping device.

## 2.     Plaintiff lacks standing to sue under either statute

Plaintiff misconstrues Defendants' Article III standing arguments.  (Opp. at 24-25.)  Standing to assert "wiretap claims" is not the same thing as standing to assert a claim under Wiretap Act § 2512(b) or CIPA § 635.  A plaintiff may have Article III standing to assert a "wiretapping" claim when the plaintiff alleges the defendant actually *used* a wiretap device against her.  But that alleged injury does not somehow confer standing to sue under statutory provisions that have nothing to do with the "use" of a wiretapping device.  *See Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) ("injury that is traceable to one kind of conduct does not grant . . . standing to challenge other, even related, conduct").  Here, Defendants demonstrated that Plaintiff lacks Article III standing to bring a Wiretap Act § 2512(b) or CIPA § 635 claim because she did not suffer any injury as a result of a violation of those provisions.  (Mot. at 24.)

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS
sf-4479801

1   Plaintiff supports her argument with two cases that do not once mention
2   Wiretap Act § 2512(b)(1) or CIPA § 635.  (Opp. at 25 (citing *Facebook III*,
3   956 F.3d at 599 (Wiretap Act § 2511 and CIPA § 631); *Romero v. Securus Techs.,*
4   *Inc.*, 216 F. Supp. 3d 1078, 1088 (S.D. Cal. 2016) (CIPA § 636)).  As for
5   *Moosejaw* and *Luis*, on which Plaintiff also relies, the standing question serves to
6   highlight the errors in conflating the "making/possessing/selling" statute with the
7   "use" statute.  (*See* Mot. at 23 n.14.)  Plaintiff could not possibly have been injured
8   by the mere manufacture, sale, possession, or any other item listed in Wiretap Act
9   § 2512(1)(b) or CIPA § 635.  "That means that [she] lack[s] Article III standing
10   too." *Graham*, 2021 WL 1312765, at *8.

### 3.   Quantum's platform is not a "device primarily or exclusively" designed for "eavesdropping"

13   Plaintiff offers a largely irrelevant discussion of how the Wiretap Act and
14   CIPA should be interpreted broadly, and conceivably applied to any new
15   technology.  It is Plaintiff's burden, however, to plead plausibly that Quantum's
16   platform is a "device" within the meaning of the statutes.  Plaintiff has not done so.
17   Nor does she have any response to *In re Facebook Internet Tracking Litig.*, 140 F.
18   Supp. 3d 922, 937 (N.D. Cal. 2015) (*Facebook I*), where the court dismissed a
19   CIPA claim because the plaintiffs failed to plead facts showing that the "cookie" at
20   issue there was a "device."  *Moosejaw* does not save her.  The court there accepted,
21   without analysis (including of *Facebook I*), the plaintiff's conclusory allegation
22   that the code at issue was a "device," which merely parroted the statutory
23   language.  *Moosejaw*, 2019 WL 5485330, at *3.  *Iqbal* requires far more.  556 U.S.
24   at 678.  Further, contrary to Plaintiff's assertion, *Moosejaw* does not stand for the
25   proposition that what constitutes a "device" is a "question of fact."  (Opp. at 27);
26   *see generally Moosejaw* (no such discussion).
27   As Defendants explained, Plaintiff's allegations do not allow for the

28

sf-4479801

plausible inference that Quantum's "code" is used or designed "primarily or exclusively" for eavesdropping. (Mot. at 25-26.) Plaintiff responds by claiming Defendants' argument is about motive and rests on a factual dispute about how Quantum's technology works. (Opp. at 27.) Not so. Plaintiff herself alleges that Quantum's platform is a tool "to help businesses improve their website design and customer experience." (FAC ¶ 17; *see also* Compl. ¶¶ 15-21 (quoting Quantum's website)); *cf. Luis*, 833 F.3d at 634 (allegation that software was "a means for one spouse to illegally monitor the communications of another spouse" sufficient to plead it was used "primarily" for eavesdropping).

### 4.   Even if Quantum's platform were a "device," Lululemon's conduct does not violate either statute

Plaintiff is wrong to assert that the term "possesses" is not ambiguous. (Opp. at 28.) The ambiguity of statutory language is determined in part by "the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (citations omitted). Here, the general term "possesses" in § 635 is surrounded by narrower and more descriptive terms regarding manufacture, assembly, and sale, creating ambiguity. Accordingly, the term "possesses" should be limited only those entities or individuals involved in the manufacture, distribution, or sale of a prohibited device, which does not include Lululemon.[11]

### D.   Plaintiff Fails to State a Constitutional Claim for Invasion of Privacy

Plaintiff cannot plausibly allege an invasion of privacy claim here, where the only entity that has access to her communications (Lululemon) is the one with

---

[11] Plaintiff's cases again involve a different section of CIPA (§ 632.7) and have no bearing on this argument. *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1007 (C.D. Cal. 2014) and *Maghen v. Quicken Loans, Inc.*, No. CV 14-03840 DMG (FFMx), 2014 WL 12586447, at *4 (C.D. Cal. Oct. 28, 2014). (Opp. at 28.)

1  which she intended to communicate.  She voluntarily provided to Lululemon what

2  amounts to browsing information about her use of Lululemon's website, along

3  with her address to complete her purchase.  Quantum's platform collected this

4  information—in de-identified form—on Lululemon's behalf for Lululemon's

5  exclusive use.  No facts can support a breach of privacy here.

   **1.      Plaintiff has not alleged a legally protected privacy interest**

6       Of the two recognized legally protected privacy interests, Plaintiff focuses

7  only on "autonomy privacy," implicitly conceding that there is no "informational

8  privacy" interest.[12]  (Opp. at 28-30.)  There is no dispute that "autonomy privacy"

9  includes an interest in "conducting personal activities without observation," but

10  that interest applies only to "*bodily* autonomy," not "data autonomy."  (Mot. at 29

11  (citing cases).)  While some of the information allegedly captured—keystrokes and

12  mouse clicks—can be analogized to video surveillance or physical "activity" (see

13  Section II.B.2), it does not rise to the level of a legally protected privacy interest

14  for two reasons.  First, everything captured here is still just data; no "surveillance"

15  actually occurs.  The "recordings" Plaintiff complains of are anonymized

16  reconstructions of a user's experience on a website created through captured data.

17  Second, per *Graham*, where the conduct at issue does not amount to wiretapping, it

18  follows that there can be no invasion of privacy.  *See Graham*, 2021 WL 1312765,

19  at *8 ("[b]ecause there was no plausible wiretapping . . . , the plaintiffs did not

20  plausibly plead. . . a legally protected privacy interest").[13]

---

[12] By choosing to not address Defendants' arguments on informational privacy
interests, Plaintiff has waived any opposition.  *See, e.g., Shakur v. Schriro*, 514
F.3d 878, 892 (9th Cir. 2008) ("[A] plaintiff has 'abandoned . . . claims by not
raising them in opposition'."); *Lozano v. Doe 1*, No. 5:20-cv-00684-SVW (SK),
2020 WL 6276988, at *4 (C.D. Cal. Aug. 6, 2020) ("Plaintiff waived [] argument
by not raising it in his opposition to Defendants' motion to dismiss.").

[13] Plaintiff also cites to *In re Google Assistant Privacy Litigation*, 457 F. Supp.
3d 797 (N.D. Cal. 2020) for the proposition that "courts have repeatedly found the
surreptitious recording of a plaintiff's conversations or activity to constitute an
actionable intrusion." (Opp. at 28.)  But, Plaintiff leaves out the very next sentence

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS
sf-4479801

Nor can Plaintiff avoid the "bodily autonomy" requirement. She has no response to the cases Defendants cited, except to say that under *Facebook III*'s two-part test whether information involved bodily autonomy "does not control." (Opp. at 30.) Plaintiff is wrong that in *Facebook III* the Ninth Circuit "abandoned" the three-part test Defendants set forth in their motion. (*See id.*, Mot. at 27.) In that case, the plaintiffs asserted both common law and constitutional invasion of privacy claims, and, as a result, the court synthesized the tests for those claims into a single two-part test. *Facebook III*, 956 F.3d at 601. Plaintiff, however, asserts a constitutional invasion of privacy claim only; therefore, the three-part test applies, including the requirement that Plaintiff allege a legally protected privacy interest. *See id.*; *Vashisht-Rota v. Ottawa Univ.*, No. 20-CV-959 TWR (KSC), 2020 WL 6544708, at *4 (S.D. Cal. Nov. 6, 2020) (dismissing invasion of privacy claim for failure to establish legally protected privacy interest).

### 2. Plaintiff does not plead a reasonable expectation of privacy

Missing from Plaintiff's opposition is any argument or authority affirmatively demonstrating that Plaintiff has a reasonable expectation of privacy in what amounts to routine browsing information on Lululemon's website. Plaintiff also does not explain why she would have a reasonable expectation of privacy in the very information she chose to provide Lululemon to complete her purchase, and her attempts to rebut Defendants' other arguments fall flat.

***First***, what happened here is exactly what Plaintiff intended—she interacted with Lululemon. Quantum's platform collected the information on Lululemon's behalf and for Lululemon's exclusive use. Moreover, Plaintiff's interaction with Lululemon's website is completely de-identified when it is collected by Quantum's

---

that states claims involving the recording of "private conversations" without authorization are more analogous to these types of surreptitious recordings "than cases involving, for instance, browsing history." *Id.* at 830.

platform; only Lululemon can decrypt and re-identify the information.  Regardless, as discussed, Lululemon disclosed in its Privacy Policy that it used service providers (like Quantum) to collect information about Plaintiff's use of Lululemon's website.  (Mot. at 17; Section II.B.4.)

*Second,* Plaintiff argues her allegations show that Quantum's platform and Lululemon's use of it is "not ubiquitous, routine internet activity."  But the paragraphs Plaintiff cites from the FAC (¶¶ 35-37, 59) do not support this argument.  These paragraphs involve a 2017 "study" that does not analyze Quantum's platform.  Plaintiff also relies on this "study" to discuss users' expectations about the services Quantum provides, again, despite the fact that the study does not involve Quantum.  Moreover, none of this has anything to do with whether Lululemon's use of Quantum's platform is ubiquitous and routine.  Plaintiff alleges that Quantum's platform is "relatively new" and the internet functioned without it (FAC ¶ 37), but this too proves nothing about the routineness of the service provided here and is exactly the type of unsupported conclusory allegation that the Court need not accept as true.  *See Iqbal*, 556 U.S. at 677-79.

*Third*, both the nature of and the manner in which the data was collected must be considered when determining whether a reasonable expectation of privacy exists.  *Facebook III*, 956 F.3d at 604.  In *Facebook III*, the Ninth Circuit emphasized the manner in which the data there was collected—after users were logged out and contrary to Facebook's representations—in holding that the plaintiffs had pled claims for invasion of privacy.  *Id*. at 602-06. (distinguishing *In re Google Privacy Policy Litigation*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) and *Low v. LinkedIn*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) where the defendants tracked data while services were being used).  Here, Defendants only collected information while Plaintiff was using Lululemon's website, and the "manner in which the data was collected" weighs against finding a reasonable expectation of privacy.

sf-4479801

### 3. The alleged conduct does not amount to an egregious or offensive breach of privacy

There is no question of fact precluding the Court from concluding that the capture of Plaintiff's shopping experience on Lululemon's website does not rise to an actionable level of egregiousness. (*See* Opp. at 29.) Nor is there any case that precludes the Court from dismissing this claim with prejudice. The "rule" Plaintiff gleans from *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016 (*Opperman II*) and *Facebook III* does not apply. In those cases, the question of whether the *specific* conduct alleged constituted an egregious breach of privacy could not be answered at the pleading stage. The conduct alleged here is entirely different. In both those cases the defendants stated they would not engage in the complained of conduct. Further, neither of the cases involved the collection of information *voluntarily* provided to the same entity that ultimately used the information. And the information collected was much more "private" than here, where the information is de-identified upon collection. *See Facebook III*, 956 F.3d at 596, 602-06 (tracking every website visited after stating it did not track after users logged out); *Opperman II*, 205 F. Supp. 3d at 1067-70 (uploading users' "contacts" from their cell phones after stating it only needed to "look" at contacts).

Plaintiff again relies on *Moosejaw*, but omits a critical detail. (Opp. at 29-30.) The *Moosejaw* court actually agreed that keystrokes and mouse clicks were not particularly sensitive. 2019 WL 5485330, at *3. But the court was swayed by the plaintiff's allegation that the code "scanned [the plaintiff's] computer" to learn his "identity and browsing habits," which a jury could find to be highly offensive. *See id.* Plaintiff does not and cannot make such an allegation since only Lululemon can associate Plaintiff's experience on its website with Plaintiff. For this reason *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014) (*Opperman I*) and *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204

(C.D. Cal. 2017) are unhelpful; they involved personally identifiable information. Here, the only personally identifiable information Plaintiff alleges was collected is her address and only Lululemon can access this information.

Finally, Plaintiff's attempts to distinguish the cases Defendants cite fail. Plaintiff argues that the facts of these cases are not "anything close" to the facts of this case.  (Opp. at 32.)  Plaintiff is right; these cases involve the capture ***and*** disclosure of ***much more*** than the information Plaintiff alleges was captured here. The cases Defendants cited involve, for example, the collection ***and disclosure*** of personal identifying information, responsiveness to ads, demographic information, and even social security numbers.  (Mot. at 33-34.)  None of this type of information is at issue here.  If the capture and disclosure of non-encrypted highly personal information, such as social security numbers, does not constitute an egregious breach of privacy, the capture alone of de-identified and/or encrypted non-highly personal information certainly does not.

## III.    CONCLUSION

Plaintiff has already amended once, with the benefit of Defendants' initial motion to dismiss.  Further amendment would only prolong the inevitable, and Defendants accordingly request the Court dismiss this case with prejudice.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995).

Dated:  May 13, 2021                      MORRISON & FOERSTER LLP


                                          By: */s/ Purvi G. Patel*
                                          _____
                                               Purvi G. Patel
                                          ***Attorneys for Defendant***
                                          ***Quantum Metric, Inc.***

sf-4479801

Dated:  May 13, 2021                    DLA PIPER LLP (US)

                                        By: */s/ David B. Farkas*
                                             David B. Farkas
                                        **Attorneys for Defendant**
                                        **Lululemon USA Inc.**

## ECF ATTESTATION

I, Purvi G. Patel, am the ECF User whose ID and password are being used to file the foregoing document.  In accordance with Local Rule 5-4.3.4, concurrence in the filing of this document has been obtained from, David B. Farkas, counsel for Defendant Lululemon USA, Inc., and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: May 13, 2021                    MORRISON & FOERSTER LLP

                                        By:  */s/ Purvi G. Patel*
                                             Purvi G. Patel
                                        **Attorneys for Defendant**
                                        **Quantum Metric, Inc.**

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS
sf-4479801